ORIGINAL

FILED
MAR 27 2008
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

THE CENTRE ON 441, LLP, a
Florida Limited Partnership

Case No: 08-213 C

v.

THE UNITED STATES and
THE UNITED STATES POSTAL SERVICE

______________________________/

## COMPLAINT

Plaintiff, The Centre On 441, LLLP, by and through its undersigned counsel, sues the Defendants, The United States and United States Postal Service, and states:

### The Parties and Jurisdiction

1. This is an action for injunction, declaratory relief, and damages with jurisdiction vested in this Court pursuant to 28 U.S.C. §1491 and the Contract Disputes Act ("CDA"), 41 U.S. C. §601, *et. seq*.

2. Plaintiff, The Centre On 441, LLLP ("441 Centre"), is a Florida Limited Partnership, with its principal place of business and doing business in Palm Beach County, Florida.

3. Defendant, United States Postal Service ("USPS"), is an independent establishment of the Executive Branch of the United States of America with offices in and doing business in Palm Beach County, Florida (hereinafter The United States Postal Service and The United States will be referred to collectively as "USPS" or "United States Postal Service").

**Factual Allegations**

4. 441 Centre is the current owners of the Shopping Center located at 10301 Southern Boulevard, Palm Beach County, Royal Palm Beach, Florida 33411-9998 ("Shopping Center").

5. On or about January 18, 1994, the USPS and Robert L. Miller d/b/a Southern Centers ("Miller") entered into a Facilities Department Lease whereby the USPS leased space at the Shopping Center from Miller in order to operate the Palms West Branch of the USPS ("Lease"). The initial term of the Lease was fifteen (15) years commencing January 9, 1995 and ending January 8, 2010 ("Initial Term") with two five (5) year renewal options ("Options"). A true and correct copy of the Lease is attached as **Exhibit "A"**.

6. 441 Centre is the successor-in-interest to Miller.

7. The Lease delineated the square footage allocated to the USPS for such areas as net floor space, platform, parking and maneuvering, and sidewalks. The square footage allocations in the Lease have never been contractually increased, decreased, or otherwise modified. The allocations are as follows:

| Area | Square Feet |
|---|---|
| Net Floor Space | 32,376 |
| Platform | 1,968 |
| Parking & Maneuvering | 67,200 |
| Sidewalks | 2,970 |
| Total Site Area | 108,000 |

8. The square footage allocation for parking and maneuvering is an essential, material, and vitally important term and goes to the essence of the Lease in that it was understood that the USPS will not only be conducting a retail operation out of the Palms

West Branch, but also a mail processing and delivery operation. As a result, the landlord desired to limit and still desires to limit the exterior square footage used by the USPS for parking and maneuvering so as to benefit the remaining tenants and to maintain the viability of the remaining rentable space at the Shopping Center.

9. This concern is particularly acute in relation to the parking and maneuvering square footage in that 441 Centre needs to maintain open spaces for parking and maneuvering for other tenants and in order to adequately market and rent the remaining rentable space in the Shopping Center. Further, 441 Centre desires to maintain the overall nature of the Shopping Center as a retail complex rather than as a warehouse and delivery center.

10. In the beginning, the USPS abided by the terms of the Lease in relation to the contracted for square footage in the Lease. However, the USPS has dramatically increased the number of employees, delivery trucks, and independent delivery contractors working for the USPS out of the Palms West Branch.

11. As a result, the USPS is now employing more square footage allowed under the Lease in relation to parking and maneuvering.

12. In fact, the USPS is employing far in excess of the square footage allowed for parking and maneuvering under the Lease. The USPS on a consistent and regular basis is using not only the contracted for 67,200 square feet, but also approximately an additional 25,658 square feet of parking and maneuvering directly west of the allocated area and another additional 13,734 square feet directly to the southeast of the allocated area. This equates to an additional 39,392 square feet or approximately a 59% increase above and in violation of the Lease.

13. 441 Centre has consistently requested the USPS to cease and desist using more than its contracted for square footage for parking and maneuvering allowed under the Lease, but the USPS has failed or refused to cease using more square footage than allowed under the Lease.

14. All conditions precedent to this action have been fulfilled, satisfied or waived.

**Claims Process Under the CDA**

15. On or about April 26, 2007, pursuant to the CDA, 441 Centre sent a Claims Letter ("Initial Claims Letter") to the USPS concerning the breach of the Lease and requesting that the USPS immediately cease and desist using more than the contracted for square footage allowed under the Lease and claiming monetary damages in excess of $50,000.00 due to the continued breach of the Lease. A true and correct copy of the Initial Claims Letter, without the referenced exhibits, is attached as **Exhibit "B."**

16. On or about June 5, 2007, USPS responded to the Initial Claims Letter stating that the Initial Claims Letter "does not constitute a proper claim pursuant to the Contract Disputes Act ("CDA") 41 U.S.C. 601 et. seq., because your client requests payment but fails to specify a sum certain" ("USPS Response to Initial Claims Letter"). A true and correct copy of the USPS Response to Initial Claims Letter is attached as **Exhibit "C."**

17. On or about June 27, 2007, 441 Centre responded by amending its Initial Claims Letter to solely seek declaratory and injunctive relief ("Amended Claims Letter"). 441 Centre requested in its Amended Claims Letter that the USPS once again cease and desist from using more than the contracted for square footage allowed under the Lease

and for a declaration of the rights and obligations of the parties under the Lease as to the parking and maneuvering square footage allocated to the USPS under the Lease. A true and correct copy of the Amended Claims Letter is attached as **Exhibit "D."**

18. On or about August 29, 2007, USPS responded to the Amended Claims Letter ("USPS Response to Amended Claims Letter") by stating, in pertinent part, that

> "The Postal Service acknowledges that postal and employee vehicles currently use more than the 67,200 square feet of dedicated parking and maneuvering space allotted under the Lease. Please be advised that the Postal Service is working diligently to resolve the situation as quickly as possible. In furtherance thereof, the Postal Service has discussed potential solutions with Lessor in good faith. While the Postal Service recognizes the importance of reaching a prompt resolution, it is essential that the Postal Service maintain uninterrupted service to the West Palm Beach community. Therefore, the Postal Service is unable to immediately alter its operations at the subject facility. However, the Postal Service is in the process of evaluating all available alternatives and will take action as soon as practicable to do so."

A true and correct copy of the USPS Response to Amended Claims Letter is attached as **Exhibit "E."**

19. On November 14, 2007, after the receipt of the USPS Response to Amended Claims Letter wherein the USPS admitted breaching the Lease, but stated that the USPS will continue to breach the Lease with impunity for as long as the USPS desired, 441 Centre amended its Amended Claims Letter ("Second Amended Claims Letter"). A true and correct copy of the Second Amended Claims Letter is attached as **Exhibit "F."**

20. 441 Centre in its Second Amended Claims Letter requested declaratory relief in the form of a declaration that due to the USPS' continuous breach of the Lease that the Lease is null and void and of no further force and effect. However, due to the USPS' concern to maintain uninterrupted mail service to the community, the USPS

would have a reasonable amount of time to vacate the Shopping Center, which time shall not to exceed more than one (1) year ("Vacate Period").

21. However, during the Vacate Period, the Lease terms will remain in effect except that the USPS shall be able to use the current amount of excessive parking and maneuvering square footage to insure uninterrupted service to the community. Further, as monetary damages and compensation for the breach of the Lease, the USPS will pay damages for its excessive use of parking and maneuvering square footage both during the Vacate Period and prior to the Vacate Period. 441 Centre than, in detail, calculated damages for the use of excessive parking and maneuvering square footage being used by the USPS as $589,600.00/year or $1,615.34/day.

22. On or about January 28, 2008, USPS responded to the Second Amended Claims Letter by rescinding the USPS Response to Amended Claims Letter in which the USPS admitted liability for breach of the Lease and the USPS, in a reversal, denied any violation of the Lease or the use of excessive parking or maneuvering square footage ("USPS Response to the Second Amended Claims Letter"). A true and correct copy of the USPS Response to the Second Amended Claims Letter is attached as **Exhibit "G."**

**Count I**
**Injunctive Relief**

23. 441 Centre repeats and realleges its allegations in paragraphs 1-22 as if fully set forth herein.

24. This is an action for injunctive relief pursuant to 28 U.S.C. §1491(a)(2) and the Contract Disputes Act ("CDA"), 41 U.S. C. §601, *et. seq.*

25. 441 Centre is suffering and will continue to suffer irreparable harm if the USPS is not compelled to abide by the terms of the Lease and cease and desist its

excessive use of parking and maneuvering square footage at the Shopping Center in violation of the Lease.

26. 441 Centre has no adequate remedy at law other than an injunction to prevent the USPS from using more square footage than allowed under the Lease in relation to parking and maneuvering.

27. 441 Centre is entitled to a judgment on the merits of the USPS' breach of the Lease as to the use of more square footage than allowed under the Lease in relation to parking and maneuvering.

28. The harm suffered by 441 Centre if an injunction is not entered outweighs any harm the USPS will suffer if the injunction is granted in that the injunction will merely compel the USPS to abide by the terms and conditions of the Lease.

29. USPS' breach of the Lease is continuous, flagrant, and fails to comport with standards of good faith and fair dealing. Further, the square footage allocation for parking and maneuvering was and is an essential, material, and vitally important term and goes to the essence of the Lease.

30. As a result, an injunction should be entered compelling the USPS to comply with the Lease provision on the amount of square footage used for parking and maneuvering.

WHEREFORE, Plaintiff, The Centre On 441, LLLP, respectfully requests this Honorable Court reverse the Defendant's, United States Postal Service's, January 28, 2008 Response to the Second Amended Claims Letter, enter judgment against Defendant, United States Postal Service, for injunctive relief compelling the USPS to comply with the Lease provision on the amount of square footage used for parking and maneuvering,

award 441 Centre its court costs, and any additional and further relief this Court deems necessary, just and proper.

**Count II**
**Declaratory Relief**

31. 441 Centre repeats and realleges its allegations in paragraphs 1-22 as if fully set forth herein.

32. This is an action for declaratory relief pursuant to 28 U.S.C. §1491(a)(2) and the Contract Disputes Act ("CDA"), 41 U.S. C. §601, *et. seq.*

33. There is a bona fide, actual, and present practical need for a declaration of the amount of square footage that the USPS is entitled to under the Lease as to parking and maneuvering and whether the USPS is in violation of the square footage allocation for parking and maneuvering.

34. This dispute concerns a present, ascertained, or ascertainable state of facts or a present controversy as to the state of the facts as to the Lease and the amount of square footage being used by the USPS as to parking and maneuvering.

35. All parties who have, or reasonably may have, an actual, present, adverse or antagonistic interest in this litigation, either in fact or law, are before this Court by proper process or class representation.

36. The relief sought is not merely the giving of legal advice or the answer to a question propounded for curiosity.

37. Accordingly, the parties to this action are in doubt as to their legal rights and obligations under the Lease and require a declaratory judgment of this Court to resolve this dispute.

38. 441 Centre has no other adequate remedy at law.

39. 441 Centre requests that a declaratory judgment be entered in its favor declaring that the USPS is in breach of the Lease as to the amount of square footage allocated to the USPS under the Lease and being used by the USPS in relation to parking and maneuvering.

40. Further, 441 Centre requests a declaratory judgment that the USPS' breach of the Lease is continuous, flagrant, and fails to comport with standards of good faith and fair dealing. Moreover, 441 Centre requests a declaratory judgment that the square footage allocation for parking and maneuvering was and is an essential, material, and vitally important term and goes to the essence of the Lease.

41. As a result, a declaratory judgment should be entered declaring the Lease null, void, and of no further force and effect. At the very least, the Options under the Lease should be declared null, void, and of no further force and effect due to USPS' continuous and flagrant breach of the Lease.

WHEREFORE, Plaintiff, The Centre On 441, LLLP, respectfully requests this Honorable Court reverse the Defendant's, United States Postal Service's, January 28, 2008 Response to the Second Amended Claims Letter, enter a declaratory judgment against Defendant, United States Postal Service, holding the USPS in breach of the Lease, declare the Lease and/or the Options under the Lease null, void, and of no further force and effect, award 441 Centre its court costs, and any additional and further relief this Court deems necessary, just and proper.

**Count II**
**Damages**

42. 441 Centre repeats and realleges its allegations in paragraphs 1-22 as if fully set forth herein.

43. USPS breached the Lease by using more than its contracted for square footage for parking and maneuvering allowed under the Lease.

44. USPS breach of the Lease is continuous, flagrant, and fails to comport with standards of good faith and fair dealing. Further, the square footage allocation for parking and maneuvering was and is an essential, material, and vitally important term and goes to the essence of the Lease.

45. As a result of the breach of the Lease, 441 Centre has been damaged.

WHEREFORE, Plaintiff, The Centre On 441, LLLP, respectfully requests this Honorable Court reverse the Defendant's, United States Postal Service's, January 28, 2008 Response to the Second Amended Claims Letter, declare the Lease and/or the Options under the Lease null, void, and of no further force and effect, enter judgment against Defendant, United States Postal Service, for all compensatory, incidental, and other damages incurred during the time the USPS failed to abide by the Lease and used excessive square footage in relation to parking and maneuvering, award 441 Centre its court costs and any additional and further relief this Court deems necessary, just and proper.

Dated this 26th day of March, 2008.

RUDEN, McCLOSKY, SMITH,
SCHUSTER & RUSSELL, P.A.
222 Lakeview Avenue, Suite 800
West Palm Beach, FL 33401
(561) 838-4511 - Telephone
(561) 514-3411 - Facsimile

By:______________________
Kenneth M. Curtin
Florida Bar Number 87319
Attorneys for 441 Centre

ORIGINAL

United States Postal Service

Lease

PALMS WEST BRANCH - WEST PALM BEACH, FL 33411-9998

EXHIBIT
"A"
ALL-STATE LEGAL®

# U.S. Postal Service
## Facilities Department
## Lease

Unit/Post Office Name & Address: PALMS WEST BRANCH - 10301 SOUTHERN BLVD
WEST PALM BEACH, FL 33411-9998

(119465-039)
PALM BEACH COUNTY

This LEASE, made and entered into by and between ROBERT L. MILLER d/b/a SOUTHERN CENTERS hereinafter called the Lessor, and the United States Postal Service, hereinafter called the Postal Service:

In consideration of the mutual promises set forth and for other good and valuable consideration, the sufficiency of which is hereby acknowledged, the parties covenant and agree as follows:

1. The Lessor hereby leases to the Postal Service and the Postal Service leases from the Lessor the following premises, hereinafter legally described in paragraph 9, in accordance with the terms and conditions described herein and contained in the 'General Conditions to U.S. Postal Service Lease,' Section A, attached hereto and made a part hereof.

   Upon which is a ONE STORY MASONRY BUILDING IN THE SOUTHERN CENTER and which property contains areas, spaces, improvements, and appurtenances as follows:

| AREA | SQ. FEET | |
|---|---|---|
| Net Floor Space | 32,376 | |
| Platform | 1,968 | |
| Parking & Maneuvering | 67,200 | |
| Other: | | |
| Driveway | | UNLIMITED INGRESS/EGRESS OVER COMMON |
| Landscaping | | AREAS OF SHOPPING CENTER |
| Sidewalks | 2,970 | |
| Total Site Area | 108,000 | |

2. RENTAL: The Postal Service will pay the Lessor an annual rental of: See Attached Addendum

   payable in equal installments at the end of each calendar month. Rent for a part of a month will be prorated. Rent checks shall be disbursed as follows:

   payable to: ~~UNITED STATES TRUST COMPANY OF NEW YORK. ACCT#094786 P.O. BOX 840 COOPER STATION NEW YORK, NY 10276-0840~~

   SOUTHERN CENTERS
   10397 SOUTHERN BOULEVARD
   ROYAL PALM BEACH, FL 33411-4339

   unless the Contracting Officer is notified, in writing by Lessor, of any change in payee or address at least sixty (60) days before the effective date of the change.

3. TO HAVE AND TO HOLD the said premises with their appurtenances:

   FIXED TERM: The term beginning 01/09/1995 and ending 01/08/2010 for a total of 15 years.
   (Dates to be inserted by the Contracting Officer in accordance with the Construction Rider.)

# U.S. Postal Servi●
## Facilities Department
## Lease

Unit/Post Office Name & Address: PALMS WEST BRANCH - 10301 SOUTHERN BLVD
WEST PALM BEACH, FL 33411-9998 (119465-039)
PALM BEACH COUNTY

4. RENEWAL OPTIONS: The Lease may be renewed, at the option of the Postal Service, for the following separate and consecutive terms and at the following annual rentals:

| RENEWAL OPTION TERM | NO. OF YEARS | PER ANNUM RENTAL |
|---|---|---|
| First | 5 | $374,748.00 |
| Second | 5 | $393,480.00 |

provided that notice is sent, in writing, to the Lessor at least 180 days before the end of the original lease term and each renewal term.' All other terms and conditions of this Lease will remain the same during any renewal term unless stated otherwise herein.

5. TERMINATION:
This Lease may not be terminated during the fixed term. After the fixed term, this Lease may be terminated, pursuant to this paragraph by the Postal Service upon 365 days written notice to the Lessor.

6. UTILITIES, SERVICES, AND EQUIPMENT: Lessor, as part of the rental consideration, shall furnish the following utilities, services and equipment:
(See Lessor Obligations of General Conditions (A.24) and/or attached addendum for definitions.)
Heating System, Air Conditioning Equipment, Light Fixtures, Sewerage System, Electrical System, Water System,
ALL SYSTEMS AS PRESENTLY INSTALLED INC/ AUTOMATIC FRONT DOOR ALL OF OF WHICH MAY BE ALTERED, REPLACED OR CHANGED PER CONSTRUCTION RIDER.

7. OTHER PROVISIONS: The following additional provisions, modifications, riders, layouts and/or forms were agreed upon prior to execution and made a part hereof:
Construction Rider - Existing Bldgs (C-1), Maintenance Rider - USPS (M-1),
USPS WILL PAY FOR UTILITIES METERED FOR THE SOLE BENIFIT AND CONSUMPTION BY THE USPS AND WILL ALSO PAY FOR TRASH REMOVAL.
THERE WILL BE NO ADDITIONAL CHARGES OF ANY KIND SUCH AS CAM OR TAX PASS-THRUS.

8. The undersigned has completed the 'Representations and Certifications.' (See Section B).

9. LEGAL DESCRIPTION:
A PORTION OF THE PROPERTY LEGALLY DESCRIBED ON EXHIBIT 1 ATTACHED AND MADE A PART OF THIS LEASE AND ALSO IDENTIFIED ON THE ATTACHED SITE PLAN

**U.S. Postal Service**
**Facilities Department**
**Lease**

Unit/Post Office Name & Address: PALMS WEST BRANCH - 10301 SOUTHERN BLVD (119465-039)
WEST PALM BEACH, FL 33411-9998 PALM BEACH COUNTY

EXECUTED BY LESSOR this 18 day of Jan, 1994.

ALL INDIVIDUAL LESSORS/OFFERORS AND SPOUSE MUST SIGN

ROBERT L. MILLER, OWNER

Linnette Miller

LINNETTE MILLER, HIS WIFE

Lessor: Address 10397 SOUTHERN BLVD WEST PALM BEACH FL 33411-4396
Telephone No. (407) 790-1414
Taxpayer Id No. 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

Witness ROBERT T. WILKES, JR. Witness

ACCEPTANCE BY THE POSTAL SERVICE

Date 1/18/94 By Bruce B. Bland
Contracting Officer
BRUCE B. BLAND MANAGER
FACILITIES SERVICE OFFICE 4000 DEKALB TECH PKWY 550
ATLANTA GA 30340-2799

# U.S. Postal Service
## Facilities Department
## Addendum

Unit/Post Office Name & Address: PALMS WEST BRANCH - 10301 SOUTHERN BLVD
WEST PALM BEACH, FL 33411-9998 PALM BEACH COUNTY

PARA 2 RENTAL SCHEDULE- FIFTEEN (15) YEAR BASE TERM-CONT'D
1ST FIVE YEARS $309,000./YEAR
2ND FIVE YEARS $324,456./YEAR
3RD FIVE YEARS $340,680./YEAR

PARAGRAPH 10-USPS FINAL APPROVAL(APPRAISAL & PROJECT AUTHORIZATION BY SOUTHEAST AREA MGR)-THIS LEASE IS SUBJECT TO THE USPS MAKING A DILIGENT EFFORT TO OBTAIN FINAL APPROVAL OF THIS PROJECT BY FEBRUARY 1, 1994 HOWEVER THIS DATE SHALL AUTOMATICALLY EXTEND TO FEBRUARY 15,1994 IF NECESSARY.BEYOND THAT DATE, THE TIME MAY BE EXTENDED BY THE LESSOR AND THE USPS AS MUTUALLY AGREED IN WRITING. IF EITHER PARTY IS UNWILLING TO EXTEND, THEN THIS LEASE SHALL BECOME NULL AND VOID WITHOUT COST TO EITHER PARTY.

PARAGRAPH 11-COMPLETION OF CONSTRUCTION RIDER(REFERENCE ATTACHED PAGES C1-C4)-AS OF THE DATE OF THIS LEASE, THE USPS AND LESSOR'S ARCHITECT WILL WORK IN A DILIGENT FASHION TO COMPLETE PLANS AND SPECIFICATIONS FOR THE USPS BUILDOUT AND A FINAL COST IN ORDER TO COMPLETE PARAGRAPHS 2(BY LESSOR) AND PARAGRAPH 4 (CONSTRUCTION PHASE) OF THE ATTACHED CONSTRUCTION RIDER. IF THE USPS AND LESSOR CANNOT AGREE TO A FINAL PRICE FOR CONSTRUCTION, THEN PARAGRAPH 3(a) OF THE ATTACHED CONSTRUCTION RIDER SHALL APPLY AND THE USPS AGREES TO PAY THE LESSOR'S ARCHITECT 6% OF THE FINAL CONSTRUCTION COST TO THE USPS FOR THE SERVICES RENDERED IN PREPARING THE PLANS AND SPECIFICATION USED BY THE USPS IN CONTRACTING VIA A THIRD PARTY CONTRACT.

INITIAL OF PROPONENT 1/18/94

DATE 1-18-94

27,038

LEGAL DESCRIPTION

SOUTHERN CENTERS

EXHIBIT 1

PARCEL A

A parcel of land in Section 36, Township 43 South, Range 41 East, Palm Beach County, Florida, and being a part of Tracts 6 and 7, Block 9, PALM BEACH FARMS COMPANY PLAT NO. 3, according to the Plat thereof, as recorded in Plat Book 2, pages 45 through 54, inclusive, Public Records of Palm Beach County, Florida; said parcel of land being specifically described as follows:

Beginning at the Northeast corner of West One-Half of said Tract 7; thence South 00°31'56" East, along the East line of the West One-Half of said Tract 7, a distance of 910.65 feet to a point on the North line of the South 425.00 feet of the East One-Half of said Tract 7; thence, North 88°07'11" East, along said North line, a distance of 400.11 feet to a point on the East line of the West 400.00 feet of the East One-Half of said Tract 7; thence, South 00°31'56" East, along said East line, a distance of 206.34 feet to a point on the Northerly ultimate Right-of-Way line for State Road 80; thence, North 86°25'20" East; along said North Right-of-Way line, a distance of 245.73 feet; thence, North 00°34'13" West, departing said Right-of-Way line, a distance of 103.95 feet; thence North 88°07'11" East, a distance of 158.05 feet; thence, South 01°50'18" West, a distance of 179.82 feet to a point on the Northerly ultimate Right-of-Way line for State Road 80; thence, North 86°25'20" East; along said Northerly Right-of-Way line, a distance of 124.90 feet to a point on the West Right-of-Way line of State Road 7 as recorded in Official Records Book 5345, page 595, Public Records of Palm Beach County, Florida; thence North 01°33'47" East, along said West Right-of-Way line, a distance of 945.44 feet; thence, North 01°33'58" East, continuing along said West Right-of-Way line, a distance of 151.9 feet to a point on the North line of said Tract 6; thence South 89°03'43" West, departing said Right-of-Way line and along the North line of said Tracts 6 and 7, a distance of 960.69 feet to the Northeast corner of the West One-Half of said Tract 7 and the Point of Beginning.

PARCEL B

A parcel of land in Section 36, Township 43 South, Range 41 East, Palm Beach County, Florida and being a part of Tract 7, Block 9, PALM BEACH FARMS COMPANY PLAT NO. 3, according to the Plat thereof, as recorded in Plat Book 2, pages 45 through 54, inclusive, Public Records of Palm Beach County, Florida; said parcel of land being specifically described as follows:

Beginning at the Northeast corner of the West One-Half of said Tract 7; thence, South 00° 31' 56" East, along the East line of the West One-Half of said Tract 7, a distance of 1264.56 feet to a point on the Northerly Right-of-Way line of State Road 80 and a point on a curve, concave Southerly, having a radius of 11496.16 feet and whose radius point bears South 00°23'14" West; thence Westerly along said curve and along said Right-of-Way line, through a central angle of 01° 19' 31", a distance of 265.91 feet to a point of reverse curvature of a curve having a radius of 11422.16 feet; thence, Westerly along said curve and continuing along said Right-of-Way line, through a central angle of 01°07'48", a distance of 225.28 feet to the end of said curve and a point on the West line of said Tract 7, thence, departing said Right-of-Way line, North 00° 41' 24" West, along the West line of said Tract 7, a distance of 1259.24 feet to the Northwest corner of said Tract 7; thence North 89°03'43" East, along the North line of said Tract 7, a distance of 494.65 feet to the Northeast corner of the West One-Half of said Tract 7 and the Point of Beginning

# U.S. Postal Service
## Facilities Department
## Form of Acknowledgment for Individuals

UNITED STATES POSTAL SERVICE

STATE OF ______________________

SS:

COUNTY OF ______________________

Personally appeared before me, a Notary Public in and for the County and State aforesaid,

______________________________
(Identify individual party to the lease)

______________________________
(Identify individual party to the lease)

______________________________
(Identify individual party to the lease)

______________________________
(Identify individual party to the lease)

______________________________
(Identify individual party to the lease)

______________________________
(Identify individual party to the lease)

______________________________
(Identify individual party to the lease)

who is known to me to be the same person(s) who executed the foregoing lease, and who acknowledged that said person(s) signed, sealed and delivered the same as said person(s)'s free and voluntary act for the uses and purposes therein set forth.

Witness my hand and notarial seal, in the County and State aforesaid,
this ____________ day of ______________, ________.

NOTARIAL
SEAL

______________________________
Notary Public

My commission expires ______________

# U.S. Postal Service
## Facilities Department
## Form of Acknowledgment for Contracting Officer

STATE OF GEORGIA

SS:

COUNTY/PARISH OF DEKALB

Personally appeared before me, a Notary Public in and for the County/Parish and State aforesaid,

BRUCE B. BLAND
(Identify individual party to the lease)

known to be the MANAGER
FACILITIES SERVICE OFFICE, USPS
4000 DEKALB TECH. PKWY., SUITE 300
ATLANTA, GA 30340-2799

and to be the same person who executed the foregoing Lease, who deposes and says that he signed his name thereto, by authority of said Postal Service, for the purposes set forth, and as his own free and voluntary act.

Witness my hand and notarial seal, in the County/Parish and State aforesaid,
this ______________ day of ______________, ________.

NOTARIAL
SEAL

PATRICIA D. WARD
Notary Public

My commission expires MAY 18, 1996

# U.S. Postal Service
## Facilities Department
## General Conditions to USPS Lease

## SECTION A

### A.1 CHOICE OF LAW

This Lease shall be governed by Federal law.

### A.2 DEFINITIONS

As used in this contract, the following terms have the following meanings:

a. "Contracting officer" means the person executing this contract on behalf of the Postal Service, and any other employee who is a properly authorized contracting officer; the term includes, except as otherwise provided in the contract, the authorized representative of a contracting officer acting within the limits of the authority conferred upon that person.

b. "Successful offeror," "offeror," "contractor," or "Lessor" are interchangeable and refer to the party whose proposal is accepted by the Postal Service.

c. "Lease" and "agreement" are interchangeable and refer to this document, including all riders and attachments thereto.

### A.3 EXECUTION REQUIREMENTS

a. All co-owners and all other persons having or to have a legal interest in the property must execute the Lease. If the offeror is married, the husband or wife of the offeror must also execute the Lease. The offeror must submit adequate evidence of title.

b. If the offeror is a general partnership, each member must sign.

c. If the offeror is a limited partnership, all general partners must sign.

d. Where the offeror is an administrator or an executor of an estate, there must be furnished a certificate of the clerk of the court or certified copy of the court order showing the appointment of the administrator or executor, together with a certified copy of the will of the deceased. If there is no will, or in the event the will of the deceased does not specifically authorize the administrator or the executor to enter into a contract to lease the proposed quarters, it will generally be necessary to furnish, in addition to the above named items, a certified copy of the court order authorizing such administrator or executor to enter into a lease with the Postal Service.

e. Where the offeror is a trustee, a certified copy of the instrument creating the trust must be furnished together with any other evidence necessary to establish the trustee's authority to lease.

f. Where the offeror is a corporation, leases and lease agreements entered into must have the corporate seal affixed or in place thereof the statement that the corporation has no seal.

g. Where the offeror is a corporation, municipal corporation, fraternal order or society, the Lease must be accompanied by documentary evidence affirming the authority of the agent, or agents, to execute the Lease to bind the municipal corporation, fraternal order or society for which he (or they) purports to act. The usual evidence required to establish such authority is in the form of extracts from the articles of incorporation, or bylaws, or the minutes of the board of directors duly certified by the custodian of such records, under the corporate seal. Such resolutions, when required, must contain the essential stipulations embodied in the Lease. The names and official titles of the officers who are authorized to sign the Lease must appear in the document.

h. Notices. Any notice to Lessor provided under this Lease or under any law or regulation must be in writing and may be hand delivered or mailed to Lessor at the address specified on page 3 of the Lease, or at an address that Lessor has otherwise appropriately directed in writing. Any notice to the Postal Service provided under this Lease or under any law or regulation must be in writing and may be hand delivered or mailed, addressed to "Contracting Officer, U.S. Postal Service" at the address specified on page 3 of the Lease, or at an address that the Postal Service has otherwise directed in writing.

### A.4 MORTGAGEE'S AGREEMENT

If there is now or will be a mortgage on the property which is or will be recorded prior to the recording of the Lease, the offeror must notify the contracting officer of the facts concerning such mortgage and, unless in his sole discretion the contracting officer waives the requirement, the offeror must furnish a Mortgagee's Agreement, which will consent to this Lease and shall provide that, in the event of foreclosure, mortgagee, successors, and assigns shall cause such foreclosures to be subject to the Lease.

### A.5 EQUAL OPPORTUNITY

a. The contractor may not discriminate against employees or applicants because of race, color, religion, sex, or national origin. The contractor will take affirmative action to ensure that applicants are employed, and that employees are treated during employment, without regard to race, color, religion, sex, or national origin. This action must include, but not be limited to, employment, upgrading, demotion, or transfer; recruitment or recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training, including apprenticeship. The contractor agrees to post in conspicuous places, available to employees and applicants, notices provided by the contracting officer setting forth the provisions of this clause.

b. The contractor must, in all solicitations or advertisements for employees placed by it or on its behalf, state that all qualified applicants will be considered for employment without regard to race, color, religion, sex, or national origin.

c. The contractor must send to each union or workers' representative with which the contractor has a collective bargaining agreement or other understanding, a notice, provided by the contracting officer, advising the union or workers' representative of the contractor's commitments under this clause, and must post copies of the notice in conspicuous places available to employees and applicants.

d. The contractor must comply with all provisions of Executive Order (EO) 11246 of September 24, 1965, as amended, and of the rules, regulations, and relevant orders of the Secretary of Labor.

e. The contractor must furnish all information and reports required by the Executive order, and by the rules, regulations, and orders of the Secretary and must permit access to the contractor's books, records, and accounts by the Postal Service and the Secretary for purposes of investigation to ascertain compliance with these rules, regulations, and orders.

f. If the contractor fails to comply with this clause or with any of the said rules, regulations, or orders, this contract may be canceled, terminated, or suspended, in whole or in part; the contractor may be declared ineligible for further contracts in accordance with the Executive order; and other sanctions may be imposed and remedies invoked under the Executive order, or by rule, regulation, or order of the Secretary, or as otherwise provided by law.

g. The contractor must insert this clause, including this paragraph g, in all subcontracts or purchase orders under this contract unless exempted by Secretary of Labor rules, regulations, or orders issued under the Executive order. The contractor must take such action with respect to any subcontract or purchase order as the Postal Service may direct as a means of enforcing the terms and conditions of this clause (including sanctions f

# U.S. Postal Service
## Facilities Department
## General Conditions to USPS Lease

noncompliance), provided, however, that if the contractor becomes involved in, or is threatened with, litigation as a result, the contractor may request the Postal Service to enter into the litigation to protect the interests of the Postal Service.

h. Disputes under this clause will be governed by the procedures in 41 CFR 60-1.1.

### A.6 FACILITIES NONDISCRIMINATION

a. As used in this clause, the term "facility" means stores, shops, restaurants, cafeterias, restrooms, and any other facility of a public nature in the building in which the space covered by this Lease is located.

b. The Lessor agrees that he will not discriminate by segregation or otherwise against any person or persons because of race, religion, color, age, sex, or national origin in furnishing, or by refusing to furnish, to such person or persons the use of any facility including any and all services, privileges, accommodations, and activities provided thereby.

c. It is agreed that the Lessor's noncompliance with the provisions of this clause shall constitute a material breach of this Lease. In the event of such noncompliance, the Postal Service may take appropriate action to enforce compliance, may terminate this lease, or may pursue such other remedies as may be provided by law. In the event of termination, the Lessor shall be liable for all excess costs of the Postal Service in acquiring substitute space, including but not limited to the cost of moving to such space.

d. The Lessor agrees to include, or to require the inclusion of the foregoing provisions of this clause (with the terms "Lessor" and Lease" appropriately modified) in every agreement or concession pursuant to which any person other than the Lessor operates or has the right to operate any facility. The Lessor also agrees that it will take such action with respect to any such agreement as the Postal Service may direct as a means of enforcing this clause, including but not limited to termination of the agreement or concession.

### A.7 OFFICIALS NOT TO BENEFIT

No member of or delegate to Congress may be admitted to any part or share of this contract, or to any benefit arising from it. This prohibition does not apply to the extent this contract is with a corporation for the corporation's general benefit.

### A.8 CONTINGENT FEES

a. The offeror warrants that no person or selling agency has been employed or retained to solicit or obtain this contract upon an agreement or understanding for a commission, percentage, brokerage, or contingent fee, except bona fide employees or bona fide, established commercial or selling agencies maintained by the Lessor for the purpose of obtaining business.

b. For breach or violation of this warranty, the Postal Service has the right to annul this contract without liability, or at its sole discretion, to deduct from the contract price or consideration, or otherwise recover from offeror the full amount of the commission, percentage, brokerage fee, or contingent fee.

c. Licensed real estate agents or brokers having listings on property for rent, in accordance with general business practice, and who have not obtained such licenses for the sole purpose of effecting this lease, may be considered as bona fide employees or agencies within the exception contained in this clause.

### A.9 ASSIGNMENT OF CLAIMS

a. If this contract provides for payments aggregating $10,000 or more, claims for moneys due or to become due from the Postal Service under it may be assigned to a bank, trust company, or other financing institution, including any Federal lending agency, and may thereafter be further assigned and reassigned to any such institution. Any assignment or reassignment must cover all amounts payable and must not be made to more than one party, except that assignment or reassignment may be made to one party as agent or trustee for two or more parties participating in financing this contract. No assignment or reassignment will be recognized as valid and binding upon the Postal Service unless a written notice of the assignment or reassignment, together with a true copy of the instrument of assignment, is filed with

1. The contracting officer; and

2. The surety or sureties upon any bonds.

b. Except with the written consent of the Contracting Officer, assignment of this contract or any interest in this contract other than in accordance with the provisions of this clause will be grounds for termination of the contract for default at the option of the Postal Service.

c. Nothing contained herein shall be construed so as to prohibit transfer of ownership of the demised premises, so long as such transfer is subject to this agreement.

### A.10 COMPLIANCE WITH OSHA STANDARDS

To the extent this agreement is for construction, alteration, and/or repairs, the Lessor must (i) comply with applicable Occupational Safety and Health Standards, title 29 Code of Federal Regulations, Part 1910, promulgated pursuant to the authority of the Occupational Safety and Health Act of 1970; (ii) comply with any other applicable Federal, State, or local regulation governing work place safety to the extent they are not in conflict with (i); and (iii) take all other proper precautions to protect the health and safety of (a) any laborer or mechanic employed by the Lessor in performance of this agreement, (b) Postal Service employees, and (c) the public. The Lessor must include this clause in all subcontracts hereunder and to require its inclusion in all subcontracts of a lower tier. The term "Lessor" as used in this clause in any subcontract must be deemed to refer to the subcontractor.

### A.11 EXAMINATION OF RECORDS

a. The Postal Service and its authorized representatives will, until three years after final payment under this contract, or for any shorter period specified for particular records, have access to and the right to examine any directly pertinent books, documents, papers, or other records of the contractor involving transactions related to this contract.

b. The contractor agrees to include in all subcontracts under this contract a provision to the effect that the Postal Service and its authorized representatives will, until three years after final payment under the subcontract, or for any shorter specified period for particular records, have access to and the right to examine any directly pertinent books, documents, papers, or other records of the subcontractor involving transactions related to the subcontract. The term "subcontract" as used in this clause excludes:

1. Purchase orders; and

2. Subcontracts for public utility services at rates established for uniform applicability to the general public

# U.S. Postal Service
## Facilities Department
## General Conditions to USPS Lease

UNITED STATES POSTAL SERVICE

### A.12 CLEAN AIR AND WATER

The contractor agrees—

a. To comply with all the requirements of section 114 of the Clean Air Act (42 U.S.C.7414) and section 308 of the Clean Water Act (33 U.S.C. 1318) relating to inspection, monitoring, entry, reports, and information, as well as other requirements specified in section 114 of the Clean Air Act and section 308 of the Clean Water Act, and all regulations and guidelines issued to implement those acts before the award of this contract;

b. That no portion of the work required by this contract will be performed in a facility listed on the Environmental Protection Agency List of Violating Facilities on the date when this contract was awarded unless and until the EPA eliminates the name of the facility from the listing;

c. To use its best efforts to comply with clean air standards and clean water standards at the facility in which the contract is being performed; and

d. To insert the substance of this clause into any nonexempt subcontract, including this paragraph d.

### A.13 CLAIMS AND DISPUTES

a. This contract is subject to the Contract Disputes Act of 1978 (41 U.S.C. 601-613) ("the Act").

b. Except as provided in the Act, all disputes arising under or relating to this contract must be resolved under this clause.

c. "Claim," as used in this clause, means a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to this contract. However, a written demand or written assertion by the contractor seeking the payment of money exceeding $50,000 is not a claim under the Act until certified as required by subparagraph d.2 below. A voucher, invoice, or other routine request for payment that is not in dispute when submitted is not a claim under the Act. The submission may be converted to a claim under the Act by complying with the submission and certification requirements of this clause, if it is disputed either as to liability or amount or is not acted upon in a reasonable time.

d.

1. A claim by the contractor must be made in writing and submitted to the contracting officer for a written decision. A claim by the Postal Service against the contractor is subject to a written decision by the contracting officer.

2. For contractor claims exceeding $50,000, the contractor must submit with the claim a certification that -

(a) The claim is made in good faith;

(b) Supporting data are accurate and complete to the best of the contractor's knowledge and belief; and

(c) The amount requested accurately reflects the contract adjustment for which the contractor believes the Postal Service is liable.

3.

(a) If the contractor is an individual, the certification must be executed by that individual.

(b) If the contractor is not an individual, the certification must be executed by-

(1) A senior company official in charge at the contractor's plant or location involved; or

(2) An officer or general partner of the contractor having overall responsibility for the conduct of the contractor's affairs.

e. For contractor claims of $50,000 or less, the contracting officer must, if requested in writing by the contractor, render a decision within 60 days of the request. For contractor-certified claims over $50,000, the contracting officer must, within 60 days, decide the claim or notify the contractor of the date by which the decision will be made.

f. The contracting officer's decision is final unless the contractor appeals or files a suit as provided in the Act.

g. The Postal Service will pay interest on the amount found due and unpaid from-

1. The date the contracting officer receives the claim (properly certified if required); or

2. The date payment otherwise would be due, if that date is later, until the date of payment.

h. Simple interest on claims will be paid at a rate determined in accordance with the Interest clause.

i. The contractor must proceed diligently with performance of this contract pending final resolution of any request for relief, claim, appeal, or action arising under the contract, and comply with any decision of the contracting office

### A.14 AFFIRMATIVE ACTION FOR HANDICAPPED WORKERS

The following clause is applicable if this contract provides for paymen aggregating $2500 or more.

a. The contractor may not discriminate against any employee or applica because of physical or mental handicap, in regard to any position for whi the employee or applicant is qualified. The contractor agrees to take affirm tive action to employ, advance in employment, and otherwise treat qualifi handicapped individuals without discrimination in all employment practice such as employment, upgrading, demotion or transfer, recruitment, advert ing, layoff or termination, rates of pay or other forms of compensation, a selection for training (including apprenticeship).

b. The contractor agrees to comply with the rules, regulations, and relev orders of the Secretary of Labor issued pursuant to the Rehabilitation Ac 1973, as amended.

c. In the event of the contractor's noncompliance with this clause, action m be taken in accordance with the rules and regulations and relevant orders the Secretary of Labor.

d. The contractor agrees to post in conspicuous places, available to empl ees and applicants, notices in a form to be prescribed by the Director, Of of Federal Contract Compliance Programs, provided by or through contracting officer. These notices state the contractor's obligation under law to take affirmative action to employ and advance in employment quali handicapped employees and applicants, and the rights of applicants employees.

e. The contractor must notify each union or worker's representative which it has a collective bargaining agreement or other understanding tha contractor is bound by the terms of section 503 of the Act and is commi to taking affirmative action to employ, and advance in employment, ha capped individuals.

f. The contractor must include this clause in every subcontract or purc order over $2,500 under this contract unless exempted by rules, regulati or orders of the Secretary issued pursuant to section 503 of the Act, s

provisions will be binding upon each subcontractor or vendor. The contractor must take such action with respect to any subcontract or purchase order as the Director of the Office of Federal Contract Compliance Programs may direct to enforce in these provisions, including action for noncompliance.

## A.15 AFFIRMATIVE ACTION FOR DISABLED VETERANS AND VETERANS OF THE VIETNAM ERA

If this contract provides for payments aggregating $10,000 or more, the following clause is applicable.

a. The contractor may not discriminate against any employee or applicant because that employee or applicant is a disabled veteran or veteran of the Vietnam era. In regard to any position for which the employee or applicant is qualified. The contractor agrees to take affirmative action to employ, advance in employment, and otherwise treat qualified disabled veterans and veterans of the Vietnam era without discrimination in all employment practices, such as employment, upgrading, demotion or transfer, recruitment, advertising, layoff or termination, rates of pay or other forms of compensation, and selection for training (including apprenticeship).

b. The contractor agrees that all suitable employment openings of the contractor existing at the time of the execution of this contract or occurring during its performance (including those not generated by this contract and those occurring at an establishment of the contractor other than the one where the contract is being performed, but excluding those of independently operated corporate affiliates) will be listed at an appropriate local office of the State employment service system where the opening occurs. The contractor further agrees to provide such reports to the local office regarding employment openings and hires as may be required. State and local government agencies holding Postal Service contracts of $10,000 or more will also list all their suitable openings with the appropriate office of the State employment service.

c. Listing of employment openings with the employment service system will be made at least concurrently with the use of any other recruitment source or effort and will involve the normal obligations attaching to the placing of a bona fide job order, including the acceptance of referrals of veterans and nonveterans. The listing of employment openings does not require the hiring of any particular applicant or hiring from any particular group of applicants, and nothing herein is intended to relieve the contractor from any other requirements regarding nondiscrimination in employment.

d. Whenever the contractor becomes contractually bound to the listing provisions of this clause, it must advise the employment service system in each State where it has establishments of the name and location of each hiring location in the State. The contractor may advise the State system when it is no longer bound by this clause.

e. Paragraphs b, c, and d above do not apply to openings the contractor proposes to fill from within its own organization or under a customary and traditional employer/union hiring arrangement. But this exclusion does not apply to a particular opening once the contractor decides to consider applicants outside its own organization or employer/union arrangements for that opening.

f. Definitions

1. "All suitable employment openings" includes openings that occur in the following job categories: production and non-production; plant and office; laborers and mechanics; supervisory and non-supervisory; technical; and executive, administrative, and professional openings as are compensated on a salary basis of less than $25,000 per year. This term includes full-time employment, temporary employment of more than three days' duration, and part-time employment. It does not include openings the contractor proposes to fill from within its own organization or under a customary and traditional employer/union hiring arrangement or openings in an educational institution that are restricted to students of that institution. Under the most compelling circumstances, an employment opening may not be suitable for listing, including situations in which the needs of the Postal Service cannot reasonably be otherwise supplied, when listing would be contrary to national security, or when the requirement of listing would otherwise not be in the best interests of the Postal Service.

2. "Appropriate office of the State employment service" means the local office of the Federal/State national systems of public employment offices with assigned responsibility for serving the area where the employment opening is to be filled.

3. "Openings the contractor proposes to fill from within its own organization" means employment openings for which persons outside the contractor's organization (including any affiliates, subsidiaries, and the parent companies) will not be considered and includes any openings the contractor proposes to fill from regularly established "recall" lists.

4. "Openings the contractor proposes to fill under a customary and traditional employer/union hiring arrangement" means employment openings the contractor proposes to fill from union halls as part of the customary and traditional hiring relationship existing between it and representatives of its employees.

g. The contractor agrees to comply with the rules, regulations, and relevant orders of the Secretary of Labor issued pursuant to the Vietnam Era Veterans Readjustment Assistance Act of 1972, as amended.

h. In the event of the contractor's noncompliance with this clause, action may be taken in accordance with the rules, regulations, and relevant orders of the Secretary.

i. The contractor agrees to post in conspicuous places, available to employees and applicants, notices in a form to be prescribed by the Director, Office of Federal Contract Compliance Programs, provided by or through the contracting officer. These notices state the contractor's obligation under the law to take affirmative action to employ and advance in employment qualified disabled veterans and veterans of the Vietnam era, and the rights of applicants and employees.

j. The contractor must notify each union or workers' representative with which it has a collective bargaining agreement or other understanding that the contractor is bound by the terms of the Act and is committed to take affirmative action to employ, and advance in employment, qualified disabled veterans and veterans of the Vietnam era.

k. The contractor must include this clause in every subcontract or purchase order of $10,000 or more under this contract unless exempted by rules, regulations, or orders of the Secretary issued pursuant to the Act, so its provisions will be binding upon each subcontractor or vendor. The contractor must take such action with respect to any subcontract or purchase order as the Director of the Office of Federal Contract Compliance Programs may direct to enforce in these provisions, including action for noncompliance.

## A.16 GRATUITIES

a. The Postal Service may terminate this contract for default if, after notice and a hearing, the Postal Service Board of Contract Appeals determines the contractor or the contractor's agent or other representative -

1. Offered or gave a gratuity (such as a gift or entertainment) to an officer or employee of the Postal Service; and

# U.S. Postal Service
## Facilities Department
## General Conditions to USPS Lease

2. intended by the gratuity to obtain a contract or favorable treatment under a contract.

b. The rights and remedies of the Postal Service provided in this clause are in addition to any other rights and remedies provided by law or under this contract.

### A.17 HAZARDOUS/TOXIC CONDITIONS CLAUSE

"Friable asbestos material" means any material containing more than 1% asbestos by weight that hand pressure can crumble, pulverize, or reduce to powder when dry. Sites cannot have contaminated soil, water or undisclosed underground storage tanks.

Unless due to the act or negligence of the Postal Service, if contaminated soil, water, underground storage tanks or piping or friable asbestos or any other hazardous/toxic materials or substances as defined by applicable Local, State or Federal law is subsequently identified on the premises, the Lessor agrees to remove such materials or substances upon notification by the U.S. Postal Service at Lessor's sole cost in accordance with EPA and/or State guidelines. If the Lessor fails to remove the asbestos or hazardous/toxic materials or substances, the Postal Service has the right to accomplish the work and deduct the cost plus administrative costs, from future rent payments or recover these costs from Lessor by other means, or may, at its sole option, cancel this Lease. In addition, the Postal Service may proportionally abate the rent for any period the premises, or any part thereof, are determined by the Postal Service to have been rendered unavailable to it by reason of such condition.

The remainder of this clause applies if this Lease is for premises not previously occupied by the Postal Service.

By execution of this Lease the Lessor certifies:

(1) The property and improvements are free of all contamination from petroleum products or any hazardous/toxic or unhealthy materials or substances including friable asbestos, as defined by applicable State or Federal law.

(2) There are no undisclosed underground storage tanks or associated piping on the property.

The Lessor hereby indemnifies the Postal Service and its officers, agents, representatives, and employees from all claims, loss, damage, actions, causes of action, expense and/or liability resulting from, brought for, or on account of any violation of this clause.

### A.18 ADVERTISING OF CONTRACT AWARDS

Except with the contracting officer's prior approval, the contractor agrees not to refer in its commercial advertising to the fact that it was awarded a Postal Service contract or to imply in any manner that the Postal Service endorses its products.

### A.19 RECORDING

This agreement or a memorandum hereof, must be recorded at the expense of the Lessor. Such expense includes all fees required for or incident to recording. If the Lessor fails to record the Lease, or a memorandum thereof, the Postal Service may record the Lease or a memorandum thereof, and deduct all costs associated therewith from future rents.

### A.20 SUBLEASE

The Postal Service may sublet all or any part of the premises or assign this lease but shall not be relieved from any obligation under this lease by reason of any subletting or assignment.

### A.21 ALTERATIONS

The Postal Service shall have the right to make alterations, attach fixtures and erect additions, structures or signs in or upon the premises hereby leased (provided such alterations, additions, structures, or signs shall not be detrimental to or inconsistent with the rights granted to other tenants on the property or in the building in which said premises are located); which fixtures, additions or structures so placed in, upon or attached to the said premises shall be and remain the property of the Postal Service and may be removed or otherwise disposed of by the Postal Service. Prior to expiration or termination of this lease the Postal Service may remove such alterations and improvements and restore the premises to as good condition as that existing at the time of entering upon the same under the lease, reasonable and ordinary wear and tear and damages by the elements or by circumstances over which the Postal Service has no control, excepted. If however, at the expiration or termination of the lease or any renewal or extension thereof, the Postal Service elects not to remove such alterations and/or improvements, said alterations and/or improvements shall become the property of the Lessor and any rights of restoration are waived.

### A.22 APPLICABLE CODES AND ORDINANCES

The Lessor, as part of the rental consideration, agrees to comply with all codes and ordinances applicable to the ownership and operation of the building in which the rented space is situated and to obtain all necessary permits and related items at no cost to the Postal Service.

### A.23 DAMAGE OR DESTRUCTION OF PREMISES

If the demised premises or any portion thereof are damaged or destroyed by fire or other casualty, Acts of God, of a public enemy, riot or insurrection or are otherwise determined by the Postal Service to be unfit for use and occupancy, the Postal Service may:

a. terminate this lease as of the date the premises become unfit for use and occupancy,

b. require the Lessor to repair or rebuild the premises as necessary to restore them to tenantable condition to the satisfaction of the Postal Service. For any period the premises, or any part thereof, are unfit for use and occupancy, the rent will be abated in proportion to the area determined by the Postal Service to be untenantable. Unfitness for use does not include unsuitability arising from such causes as design, size, or location of the premises, or

c. accomplish all repair necessary for postal occupancy and deduct all such costs, plus administrative burden from future rents.

### A.24 LESSOR OBLIGATIONS

The Lessor's obligations regarding the services to be provided are furthe defined as follows:

a. [redacted] system together with all fuel required for proper [redacted] the system durin the continuance of the Lease. [redacted] must be in good working order anc if [redacted] Lessor, will be maintained in accordance with th [redacted]

b. [redacted] of 65 degrees F. in all [redacted] of the demised premises during th [redacted].

c. If heating system is furnished - Lessor must furnish heating system in goc working order [redacted].

1/18/94 INITIAL OF PROPONENT 1/18/94

DATE

INITIAL OF PROPONENT
DATE

# U.S. Postal Service
## Facilities Department
## General Conditions to USPS Lease

d. [redacted]

e. If light fixtures are furnished - Lessor must provide light fixtures in good working order.

f. [redacted]

g. If electrical system is furnished - Lessor must furnish an electrical system in good working order having a separate electrical meter.

h. [redacted] r system in good working [redacted] recurring water bills during the [redacted].

i. If water system is furnished - Lessor must furnish a water system in good working order with separate water meter.

j. [redacted] systems including all equipment, piping, plumbing, [redacted] nections, septic tanks, field lines and related [redacted] necessary and to pay all charges, fees and other [redacted] such system and services during the continuance of [redacted].

k. If sewerage system is furnished - Lessor agrees to furnish sewerage systems including all equipment, piping, plumbing, lines, connections, septic tanks, field lines, and related devices, as necessary during the continuance of the Lease.

l. Future Availability of Public Water and/or Sewerage Services - Regardless of Lessor's responsibility for water and/or sewerage under this Lease, if Public water and/or sewerage services are not currently available, but become available in the future, the Lessor agrees to accomplish connection, maintain, and pay all fees and costs involved in connecting the building system to the public water and/or sewerage systems. After connection, the Postal Service agrees to pay recurring charges for water consumption and use of sewerage services. If connection of such services is optional, the Postal Service will determine if the connection is to be made by the Lessor.

m. [redacted] must furnish air conditioning equipment together with [redacted] required for proper operation of the equipment [redacted] continuance of the Lease. The equipment must [redacted] working order and, if maintained by the Lessor, [redacted].

n. If air conditioning equipment is furnished - Lessor must furnish air conditioning equipment in the demised premises in good working order [redacted]

o. [redacted] of no greater than 78 degrees F. In all enclosed [redacted] of the demised premises and be responsible for [redacted] the air conditioning equipment including, but not limited [redacted] replacement of necessary filters and refrigerant [redacted] for proper operation of the equipment together with power, [redacted].

### A.25 LESSOR'S SUCCESSORS

The terms and provisions of this Lease and the conditions herein are binding on the Lessor, and all heirs, executors, administrators, successors, and assigns.

### A.26 DRUG-FREE WORKPLACE

a. Applicability. This clause applies to all contracts with individuals without regard to the dollar amount, and to all other contracts over $50,000.

b. Exceptions. This clause does not apply to those contracts that are to be performed completely outside of the United States, its territories, and possessions.

c. Definitions. As used in this clause:

1. "Controlled substance" means those substances identified in schedules I through V, Section 202 of the Controlled Substances Act (21 U.S.C. 812), and as further defined in 21 CFR Sections 1308.11 through 1308.15.

2. "Conviction" means a finding of guilt (including a finding based on a plea of guilty or a plea of nolo contender) by any judicial body charged with the responsibility to determine violations of criminal drug statutes.

3. "Criminal drug statute" means a federal or non-federal criminal statute involving drug abuse.

4. "Drug abuse" means the unlawful manufacture, distribution, dispensing, possession, or use of a controlled substance.

5. "Employee" means any person directly engaged in the performance of work under a Postal Service contract.

6. "Individual" means a contractor with no employees other than himself or herself.

7. "Workplace" means any site where work is being done in connection with this contract.

d. Requirements

1. Contractors, except as individuals, must provide a drug-free workplace by:

(a) Publishing, publicly posting, and furnishing each employee a statement that drug abuse in the workplace is prohibited and specifying what actions will be taken against employees for violations of the prohibition;

(b) Establishing a drug-free awareness program to inform all employees about:

(1) The dangers of drug abuse in the workplace;

(2) The contractor's policy of maintaining a drug-free workplace;

(3) Any available drug counseling, rehabilitation, and employee assistance programs; and

(4) The penalties that may be imposed upon employees for drug abuse violations occurring in the workplace;

(c) Notifying all employees that, as a condition of continued employment on this contract, the employee must:

(1) Abide by the contractor's prohibition of drug abuse in the workplace; and

(2) Notify the contractor of any criminal drug conviction for a violation occurring in the workplace within five (5) days of such conviction;

(d) Notifying the contracting officer within ten (10) days of receiving a notice of a conviction from an employee or otherwise;

# U.S. Postal Service
## Facilities Department
## General Conditions to USPS Lease

(e) Instituting appropriate personnel action, up to and including termination, against an employee or requiring the employee to complete a drug abuse assistance or rehabilitation program approved by a Federal, State, local health, law enforcement, or other appropriate agency within thirty (30) days of receiving a notice of conviction; and

(f) Making consistent and good faith efforts to maintain a drug-free workplace through implementation of paragraphs d.1.(a) through d.1.(e), above.

2. The contractor, if an individual, must not engage in drug abuse in the performance of this contract.

e. Sanctions. Violation of the terms of this clause may be grounds for the suspension of progress payments, termination for default, and suspension or debarment from eligibility for future Postal Service contracts.

### A.27 DAVIS-BACON ACT

The following is applicable if this agreement covers premises of not interior space in excess of 6,500 square feet and involves construction work over $2,000.00.

a. Minimum Wages

1. All mechanics and laborers employed in the contract work (other than maintenance work of a recurring, routine nature necessary to keep the building or space in condition to be continuously used at an established capacity and efficiency for its intended purpose) must be paid unconditionally, and not less than once a week, without deduction or rebate (except for deductions permitted by the Copeland Regulations (29 CFR Part 3)), the amounts due at the time of payment computed at rates not less than the aggregate of the basic hourly rates and rates of payments, contributions, or costs for any fringe benefits contained in the wage-determination decision of the Secretary of Labor, attached hereto, regardless of any contractual relationship alleged to exist between the Lessor, or subcontractor and these laborers and mechanics. A copy of the wage-determination decision must be kept posted by the Lessor at the site of the work in a prominent place where it can easily be seen by the workers.

2. The Lessor may discharge its obligation under this clause to workers in any classification for which the wage-determination decision contains:

(a) Only a basic hourly rate of pay, by making payment at not less than that rate, except as otherwise provided in the Copeland Regulations (29 CFR Part 3); or

(b) Both a basic hourly rate of pay and fringe-benefit payments, by paying in cash, by irrevocably contributing to a fund, plan, or program for, or by assuming an enforceable commitment to bear the cost of, bona fide fringe benefits contemplated by 40 U.S.C. 276a, or by a combination of these.

3. Contributions made, or costs assumed, on other than a weekly basis (but not less often than quarterly) are considered as having been constructively made for a weekly period. When a fringe benefit is expressed in a wage determination in any manner other than as an hourly rate and the Lessor pays a cash equivalent or provides an alternative fringe benefit, the Lessor must furnish information with the Lessor's payrolls showing how the Lessor determined that the cost incurred to make the cash payment or to provide the alternative fringe benefit is equal to the cost of the wage-determination fringe benefits. When the Lessor provides a fringe benefit different from that contained in the wage determination, the Lessor must show how the hourly rate was arrived at. In the event of disagreement as to an equivalent of any fringe benefit, the contracting officer must submit the question, together with the contracting officer's recommendation, to the Secretary of Labor for final determination.

4. If the contractor does not make payments to a trustee or other third person, the contractor may consider as payment of wages the costs reasonably anticipated in providing bonafide fringe benefits, but only with the approval of the Secretary of Labor pursuant to a written request by the Lessor. The Secretary of Labor may require the Lessor to set aside assets in a separate account, to meet the Lessor's obligations under any unfunded plan or program.

5. The contracting officer will require that any class of laborers or mechanics not listed in the wage-determination but to be employed under the contract will be classified in conformance with the wage-determination and report the action taken to the Administrator of the Wage and Hour Division, Employment Standards Administration, U.S. Department of Labor, Washington, D.C. 20210-0001, for approval. The contracting officer will approve an additional classification and wage rate and fringe benefits therefor only if:

(a) The work to be performed by the classification requested is not performed by a classification in the wage-determination;

(b) The classification is utilized in the area by the constitution industry; and

(c) The proposed wage rate, including any bona fide fringe benefits, bears a reasonable relationship to the wage rates contained in the wage determination.

6. If the Lessor, the laborers or mechanics to be employed in the classification or their representatives, and the contracting officer do not agree on the proposed classification and wage rate and fringe benefits therefor, the contracting officer must submit the question, together with the views of the interested parties and the contracting officer's recommendation, to the Wage and Hour Administrator for final determination. The Administrator or authorized representative will, within 30 days of receipt, approve, modify, or disapprove every proposed additional classification action, or issue a final determination if the parties disagree, and so advise the contracting officer or advise that additional time is necessary. The final approved wage rate (and fringe benefits if appropriate) must be paid to all workers performing work in the classification under the contract from the first day work is performed in the classification. The Lessor will post a copy of the final determination of the conformance action with the wage-determination determination at the site of the work. (The Department of Labor information collection and reporting requirements contained in subparagraph a.5 above and in this subparagraph a.6 have been approved by the Office of Management and Budget under OMB control number 1215-0140.)

b. Apprentices and Trainees

1. Apprentices may be permitted to work only when (a) registered individually, under a bona fide apprenticeship program registered with a State apprenticeship agency recognized by the Bureau of Apprenticeship and Training, U.S. Department of Labor, or, if no such recognized agency exists in a State, under a program registered with the Bureau of Apprenticeship and Training, or (b) if not individually registered in the program, certified by the Bureau of Apprenticeship and Training or State agency (as appropriate) to be eligible to work only if individually registered in a program approved by the Employment and Training Administration, U.S. Department of Labor.

2. The ratio of apprentices to journeymen or trainees to journeymen in any craft classification must not be greater than that permitted for the Lessor's entire work force under the registered apprenticeship or training program. Apprentices and trainees must be paid at least the applicable

# U.S. Postal Service
## Facilities Department
## General Conditions to USPS Lease

wage rates and fringe benefits specified in the approved apprenticeship or trainee program for the particular apprentice's or trainee's level of progress, expressed as a percentage of the journeyman hourly rate specified in the applicable wage-determination. If the apprenticeship or trainee program does not specify fringe benefits, apprentices or trainees must be paid in the full amount of fringe benefits listed on the wage-determination for the applicable classification unless the Administrator of Wage and Hour Division determines that a different practice prevails. Any employee listed on a payroll at an apprentice or trainee wage rate not registered, or performing work on the job site in excess of the ratio permitted under the registered program, must be paid the wage rate on the wage determination for the classification of work actually performed.

3. If the Bureau of Apprenticeship and Training or State agency recognized by the Bureau (as appropriate) withdraws approval of an apprenticeship program, or if the Employment and Training Administration withdraws approval of a trainee program, the contractor will no longer be permitted to utilize apprentices or trainees (as appropriate) at less than the applicable predetermined rate for the work performed until an acceptable program is approved. (See 29 CFR 5.16 for special provisions that apply to training plans approved or recognized by the Department of Labor prior to August 20, 1975.)

4. The utilization of apprentices, trainees, and journeymen must be in conformity with the equal employment opportunity requirements of Executive Order 11246, as amended, and 29 CFR Part 30.

c. Overtime Compensation

1. The Lessor may not require or permit any laborer or mechanic employed on any work under this contract to work more than 40 hours in any workweek on work subject to the provisions of the Contract Work Hours and Safety Standards Act (40 U.S.C. 327-333), unless the laborer or mechanic receives compensation at a rate not less than one-and-one-half times the laborer's or mechanic's basic rate of pay for all such hours worked in excess of 40 hours.

2. For violations of subparagraph c.1 above, the Lessor is liable for liquidated damages, which will be computed for each laborer or mechanic at $10 for each day on which the employee was required or permitted to work in violation of subparagraph c.1 above.

3. The contracting officer may withhold from the Lessor sums as may administratively be determined necessary to satisfy any liabilities of the Lessor for unpaid wages and liquidated damages pursuant to subparagraph c.2 above.

d. Payroll and Other Records

1. For all laborers and mechanics employed in the work covered by this clause, the Lessor must maintain payrolls and related basic records and preserve them for a period of three years after contract completion. The records must contain the name, address, and social security number of each employee, the employee's correct classification, rate of pay (including rates of contributions for, or costs assumed to provide, fringe benefits), the daily and weekly number of hours worked, deductions made, and actual wages paid. Whenever the Lessor has obtained approval from the Secretary of Labor to assume a commitment to bear the cost of fringe benefits under subparagraph a.4 above, the Lessor must maintain records showing the commitment and its approval, communication of the plan or program to the employees affected, and the costs anticipated or incurred under the plan or program. Lessors employing apprentices or trainees under approved programs must maintain written evidence of the registration of apprenticeship programs and certification of trainee programs the registration of the apprentices and trainees, and the ratios and wage rates prescribed in the applicable programs.

2. The Lessor must submit weekly, for each week in which any work covered by this clause is performed, a copy of all payrolls to the contracting officer. The Lessor is responsible for the submission of copies of payrolls of all subcontractors. The copy must be accompanied by a statement signed by the Lessor indicating that the payrolls are correct and complete, that the wage rates contained in them are not less than those determined by the Secretary of Labor, and that the classifications set forth for each laborer or mechanic conform with the work the laborer or mechanic performed. Submission of the Weekly Statement of Compliance (see 29 CFR 5.5(a)(3)(ii)) required under this agreement satisfies this requirement. As required by this clause, the Lessor must submit a copy of any approval by the Secretary of Labor. (The Department of Labor information collection and reporting requirements in this subparagraph d.2 have been approved by the Office of Management and Budget under OMB control numbers 1215-0140 and 1215-0017.)

3. The Lessor's records required under this clause must be available for inspection by authorized representatives of the contracting officer and the Department of Labor, and the Lessor must permit the representative to interview employees during working hours on the job.

4. The Lessor must comply with the Copeland Regulations of the Secretary of Labor (29 CFR Part 3), which are hereby incorporated in this contract by reference.

e. Withholding of Funds. The contracting officer may withhold from the Lessor under this or any other contract with the Lessor so much of the accrued payments or advances as is considered necessary to pay all laborers and mechanics the full amount of wages required by this contract or any other contract subject to the Davis-Bacon prevailing wage requirements that is held by the Lessor.

f. Subcontracts

1. If the Lessor or any subcontractor fails to pay any laborer or mechanic employed on the site of the work any of the wages required by the contract, the contracting officer may, after written notice to the Lessor, suspend further payments or advances to the Lessor until violations have ceased.

### A.28 BANKRUPTCY

In the event the contractor enters into proceedings relating to bankruptcy, whether voluntary or involuntary, the contractor will furnish, by certified mail, written notification of the bankruptcy to the contracting officer responsible for administering the contract. The notification must be furnished within five days of the initiation of the bankruptcy proceedings. The notification must include the date on which the bankruptcy petition was filed, the court in which the petition was filed, and a list of Postal Service contracts and contracting officers for all Postal Service contracts for which final payment has not yet been made. This obligation remains in effect until final payment under this contract.

# U.S. Postal Service
## Facilities Department
## Representations and Certifications

UNITED STATES POSTAL SERVICE

## SECTION B

### B.1 TYPE OF BUSINESS ORGANIZATION

The offeror, by checking the applicable blocks, represents that it --

a. Operates as [ ] a corporation incorporated under the laws of the State of ____________________, [X] an individual, [ ] a partnership, [ ] a nonprofit organization, or [ ] an educational institution; and [ ] a joint venture.

b. Is a [ ] small business concern, [ ] minority-owned enterprise, [ ] woman-owned business, [ ] labor surplus area concern, [ ] educational or other non-profit organization, or [X] none of the above entities.

c. SMALL BUSINESS CONCERN. A small business concern for the purposes of Postal Service procurement is a concern, including its affiliates, which is independently owned and operated, is not dominant in the field of operations in which it is submitting an offer, and is of a size consistent with the standards set forth by SBA in CFR Part 121, or if no standard has been established, then of a size employing not more than 500 employees. (Also see USPS Procurement Manual, Chapter 10, Section 1.)

d. MINORITY BUSINESS ENTERPRISE. A minority business enterprise is a concern of which at least 51 percent is owned by, and of which the managemen[t] and daily business operations are controlled by, one or more members of a minority group. (For the purpose of this definition, minority group members ar[e] United States citizens who are black Americans, Hispanic Americans, Native Americans, Asian-Pacific Americans, or Asian-Indian Americans. "Nativ[e] Americans" means American Indians, Eskimos, Aleuts, native Hawaiians. "Asian-Pacific Americans" means those whose origins are in Japan, China, th[e] Philippines, Vietnam, Korea, Samoa, Guam, the U.S. Trust Territories of the Pacific Islands, the Northern Marianas Islands, Laos, Kampuchea, or Taiwan "Asian-Indian Americans" means those whose origins are in India, Pakistan, or Bangladesh.)

e. WOMAN-OWNED BUSINESS. A woman-owned business is a business which is at least 51 percent owned, controlled, and operated by a woman [o]r women. Controlled is defined as exercising the power to make policy decisions. Operated is defined as actively involved in the day-to-day managemen[t]

f. LABOR SURPLUS AREA. A geographical area which at the time of award is either a section of concentrated unemployment or underemployment, [a] persistent labor surplus area, or a substantial labor surplus area, as defined in this paragraph.

1. Section of concentrated unemployment or underemployment means appropriate sections of States or labor areas so classified by the Secretary [of] Labor.

2. Persistent labor surplus area means an area which is classified by the Department of Labor as an area of substantial and persistent labor surpl[us] (also called Area of Substantial and Persistent Unemployment) and is listed as such by that Department in conjunction with its publication Area Tren[ds] in Employment and Unemployment.

3. Substantial labor surplus area means an area which is classified by the Department of Labor as an area of substantial labor surplus (also called Ar[ea] of Substantial Unemployment) and which is listed as such by that Department in conjunction with its publication Area Trends in Employment a[nd] Unemployment.

g. LABOR SURPLUS AREA CONCERN. A firm which will perform or cause to be performed a substantial proportion of a contract in a labor surplus are[a]

h. EDUCATIONAL OR OTHER NON-PROFIT ORGANIZATION. Any corporation, foundation, trust, or other institution operated for scientific or educatio[nal] purposes, not organized for profit, no part of the net earnings of which inures to the profits of any private shareholder or individual.

### B.2 PARENT COMPANY AND TAXPAYER IDENTIFICATION NUMBER

a. A parent company is one that owns or controls the basic business policies of an offeror. To own means to own more than 50 percent of the voting rig[hts] in the offeror. To control means to be able to formulate, determine, or veto basic business policy decisions of the offeror. A parent company need not o[wn] the offeror to control it; it may exercise control through the use of dominant minority voting rights, proxy voting, contractual arrangements, or otherwis[e]

b. Enter the offeror's Taxpayer Identification Number (TIN) in the space provided. The TIN is the offeror's Social Security Number or other Employ[er] Identification Number used on the offeror's Quarterly Federal Tax Return, U.S. Treasury Form 941.

Offeror's TIN: 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

c. [ ] Check this block if the offeror is owned or controlled by a parent company.

d. If the block above is checked, provide the following information about the parent company:

Parent Company's Name: ____________________

Parent Company's Main Office Address: ____________________

No. and Street: ____________________

City: __________ State: ____ Zip Code: ________

Parent Company's TIN: ____________________

# U.S. Postal Service
## Facilities Department
## Representations and Certifications

UNITED STATES POSTAL SERVICE

e. If the offeror is a member of an affiliated group that files its federal income tax return on a consolidated basis (whether or not the offeror is owned or controlled by a parent company, as provided above) provide the name and TIN of the common parent of the affiliated group:

Name of Common Parent: ______________________

Common Parent's TIN: ______________________

## B.3 CERTIFICATE OF INDEPENDENT PRICE DETERMINATION

a. By submitting this proposal, the offeror certifies, and in the case of a joint proposal each party to it certifies as to its own organization, that in connection with this solicitation--

1. The prices proposed have been arrived at independently, without consultation, communication, or agreement, for the purpose of restricting competition, as to any matter relating to the prices with any other offeror or with any competitor;

2. Unless otherwise required by law, the prices proposed have not been and will not be knowingly disclosed by the offeror before award of a contract, directly or indirectly to any other offeror or to any competitor; and

3. No attempt has been made or will be made by the offeror to induce any other person or firm to submit or not submit a proposal for the purpose of restricting competition.

b. Each person signing this proposal certifies that--

1. He or she is the person in the offeror's organization responsible for the decision as to the prices being offered herein and that he or she has not participated, and will not participate, in any action contrary to paragraph a above; or

2. He or she is not the person in the offeror's organization responsible for the decision as to the prices being offered but that he or she has been authorized in writing to act as agent for the persons responsible in certifying that they have not participated, and will not participate, in any action contrary to paragraph a above, and as their agent does hereby so certify; and he or she has not participated, and will not participate, in any action contrary to paragraph a above.

c. Modification or deletion of any provision in this certificate may result in the rejection of the proposal as unacceptable. Any modification or deletion should be accompanied by a signed statement explaining the reasons and describing in detail any disclosure or communication.

## B.4 CONTINGENT FEE REPRESENTATION

a. The offeror must complete the following representations:

1. The offeror ☐ has ☒ has not employed or retained any company or person (other than a full-time bona fide employee working solely for the offeror) to solicit or secure this contract.

2. The offeror ☐ has ☒ has not paid or agreed to pay any company or person (other than a full-time bona fide employee working solely for the offeror) any fee, commission, percentage, or brokerage fee, contingent upon or resulting from the award of this contract.

b. If either representation is in the affirmative, or upon request of the contracting officer, the offeror must furnish, in duplicate, a completed Form 7319, "Contractor's Statement of Contingent or Other Fees", and any other information requested by the contracting officer. If the offeror has previously furnished a completed Form 7319 to the office issuing this solicitation, it may accompany its proposal with a signed statement--

1. Indicating when the completed form was previously furnished;

2. Identifying the number of the previous solicitation or contract, if any, in connection with which the form was submitted; and

3. Representing that the statement on the form is applicable to this proposal.

## B.5 CERTIFICATION OF NONSEGREGATED FACILITIES

a. By submitting this proposal, the offeror certifies that it does not and will not maintain or provide for its employees any segregated facilities at any of its establishments, and that it does not and will not permit its employees to perform services at any location under its control where segregated facilities are maintained. The offeror agrees that a breach of this certification is a violation of the Equal Opportunity clause in this contract.

b. As used in this certification, "segregated facilities" means any waiting rooms, work areas, rest rooms or wash rooms, restaurants or other eating areas, time clocks, locker rooms or other storage or dressing areas, parking lots, drinking fountains, recreation or entertainment areas, transportation, or housing facilities provided for employees that are segregated by explicit directive or are in fact segregated on the basis of race, color, religion, or national origin, because of habit, local custom, or otherwise.

c. The offeror further agrees that (unless it has obtained identical certifications from proposed subcontractors for specific time periods) it will obtain identical certifications from proposed subcontractors before awarding subcontracts exceeding $10,000 that are not exempt from the provisions of the Equal Opportunity clause; that it will retain these certifications in its files; and that it will forward the following notice to these proposed subcontractors (except when they have submitted identical certifications for specific time periods).

# U.S. Postal Service
## Facilities Department
## Representations and Certifications

UNITED STATES POSTAL SERVICE

NOTICE

A certification of nonsegregated facilities must be submitted before the award of a subcontract exceeding $10,000 that is not exempt from the Equal Opportunity clause. The certification may be submitted either for each subcontract or for all subcontracts during a period (quarterly, semiannually, or annually).

### B.6 CLEAN AIR AND WATER CERTIFICATION

a. This certification applies only if (1) the offer exceeds $100,000, (2) the offer is for an indefinite-quantity and indicates that orders for estimating quantities will exceed $100,000 in any year, (3) a facility to be used is listed on the EPA List of Violating Facilities because of a criminal conviction, or (4) the contract is not otherwise exempt.

b. The offeror (1) certifies, by checking the applicable box, that any facility to be utilized in the performance of the proposed contract ☐ is, ☒ is not, listed on the Environmental Protection Agency List of Violating Facilities as of the date of this proposal, and (2) agrees to notify the contracting officer promptly if any communication is received from the Environmental Protection Agency before contract award indicating that any such facility is under consideration for inclusion on the List.

### B.7 LEASES BETWEEN THE POSTAL SERVICE AND ITS EMPLOYEES, CONTRACT EMPLOYEES, OR BUSINESS ORGANIZATIONS SUBSTANTIALLY OWNED OR CONTROLLED BY POSTAL SERVICE EMPLOYEES OR CONTRACT EMPLOYEES

By submitting this proposal, the offeror certifies that the offeror ☐ is, ☒ is not an employee, a personal service contract employee or a member o the immediate family of a Postal Service employee or personal service contract employee OR a business organization (partnership, corporation, joint venture etc.) substantially owned or controlled by a Postal Service employee, a personal service contract employee, or a member of the immediate family of a Posta Service employee or personal service contract employee. "Immediate family" means spouse, minor child or children, and other individuals related to th employee by blood who are residents of the employee's household.

# U.S. Postal Service
## Facilities Department
## Maintenance Rider - USPS Responsibility (Partial)

a. If the Postal Service is assuming maintenance responsibility for the demised premises for the first time, the Lessor must correct all maintenance deficiencies and obtain a written certification from a professional HVAC firm that the heating, ventilating and air conditioning systems have been maintained and are in proper working condition. The Lessor will remain responsible until all deferred maintenance work has been completed to the satisfaction of the Postal Service and Postal Service is in receipt of and accepts the aforementioned written certification.

b. The term "demised premises" as used in this rider includes the premises described in the Lease, the improvements and appurtenances to such premises and all equipment and fixtures furnished, or to be furnished, by the Lessor under this Lease.

c. The Postal Service is responsible for ordinary repairs to, and maintenance of the demised premises except for those repairs that are specifically made the responsibility of the Lessor in this Lease. The responsibility of the Postal Service as stated herein will be fulfilled at such time and in such manner as the Postal Service considers necessary to keep the demised premises in proper condition.

d. The Lessor is responsible for:

(1) Repairs to all common or joint use areas, common or joint use equipment and fixtures that may be included as part of this Lease.

(2) All repairs to structural elements and all parts of the roof system. The term "structural elements" as used in this clause is limited to the foundation, bearing walls, floors (not including floor covering), and column supports. The roof system includes, but is not limited to, the roof covering, flashing and insulation.

(3) Repairs resulting from Acts of God, of a public enemy, riot or insurrection.

(4) Inspection, prevention and eradication of termites and any other wood eating insects and for repairs of any damage resulting therefrom.

(5) Repairs resulting from defects in building construction or installation of equipment, fixtures, or appurtenances furnished by the Lessor.

(6) Repairs resulting from fire or other casualties, unless such casualties were caused by the negligence of employees or agents of the Postal Service.

(7) Any ordinary repairs by the Postal Service which were made necessary by the failure of any element for which the Lessor is responsible.

e. When the need arises for repairs which are the responsibility of the Lessor, including any repairs or actions for which the Lessor is responsible under paragraph a. hereof, the Postal Service will (except in emergencies) give the Lessor written notice of the needed repairs and will specify a reasonable deadline for completion of the work. A copy of such notice will be sent by certified or registered mail to the Lessor's mortgagee and assignee of monies due or to become due pursuant to this Lease whose names and addresses have been furnished to the Postal Service by the Lessor. If none of these parties (lessor, mortgagee or assignee) proceed with the work with such diligence so as to ensure completion within the time specified in the notice (or any extension thereof granted at the sole discretion of the Postal Service) or actually fails to complete the work within said time, the Postal Service has the right to perform the work, by contract or otherwise, and withhold the cost of such work from payments due under this Lease. In addition, the Postal Service may proportionally abate the rent for any period the demised premises, or any part thereof, are determined by the Postal Service to have been rendered unavailable to it by reason of such condition. Alternatively, the Postal Service may, if the demised premises are determined to be unfit for occupancy, at its sole discretion, cancel this Lease without liability.

"THIS RIDER APPLIES TO THE INTERIOR OF THE DEMISED PREMISES ONLY AND APPLIES TO ALL TENANT IMPROVEMENTS PROVIDED AND PAID FOR BY THE USPS UPON ITS INITIAL OCCUPANCY UNDER THE ATTACHED REQUIREMENTS OF THE CONSTRUCTION RIDER - EXISTING BUILDINGS."

INITIAL OF PROPONENT

DATE 1/18/94

1-18-94

# U.S. Postal Service
## Facilities Department
## Construction Rider - Existing Buildings

1. The Offeror agrees that:

a. The improvements, additions, repairs or remodeling as described below shall be completed to the satisfaction of the Postal Service no later than 120 calendar days after acceptance of this Lease by the Postal Service or after the Lessor's receipt of the Notice to Proceed, whichever is later.

b. The fixed term and rent will commence the first day following acceptance by the Postal Service of the completed building and/or any contemplated improvements, additions, repairs or remodeling. Said commencement date will be inserted in the Lease by the Contracting Officer.

c. The provisions of this Construction Rider, including any and all drawings, specifications, details, handbooks and other attachments made a part of the Lease, hereunder, shall govern in the event of conflict with any other terms and conditions of the Lease.

d. The provisions in Section A of the Lease, paragraph A-9, Assignment of Claims notwithstanding, this Lease may not be assigned before commencement of the fixed term, without the prior written consent of the Postal Service.

2. DESIGN PHASE

By Lessor:

Lessor to complete design drawings in accordance with the schematics furnished by the Postal Service, drawing(s), specifications, details and handbooks, including but not limited to Handbook RE-4, Standards for Facility Accessibility by the Physically Handicapped (dated April 19, 1985):

The sum of $ to be paid to the Lessor after the design is approved by the Postal Service. The following reviews by the Postal Service are required: pre-design, 10%, 30%, and 100% stages.

Within five days after acceptance of the final design by the Postal Service, the lessor shall submit a final proposal for the cost of construction of the improvements. Lessor's cost proposal must be approved and accepted by the Postal Service <u>prior to</u> construction.

3. CONSTRUCTION PHASE

a. If the Lessor's construction costs are acceptable to the Postal Service, a Notice to Proceed will be issued to the Lessor by the Postal Service's Contracting Officer. Upon receipt of the Notice to Proceed, the Lessor may commence construction of the tenant improvements. If an agreement is not reached as to the approved construction costs for the tenant improvements, the design drawings will be turned over to the Postal Service and the Postal Service may, at its sole option, ~~either~~ solicit offers for the construction and completion of the improvements using a third party contract ~~or~~ ~~terminate this Lease~~.

Note: A pre-construction conference may be required prior to the issuance of a Notice to Proceed.

b. The Postal Service will inspect the construction of the said improvements from time to time, and shall have access to the premises for that purpose at all reasonable times.

c. Any changes to the approved work must be accomplished via a written Change Order duly authorized and signed by the Contracting Officer. The Change Order will specify the work details and cost.

d. Final inspection shall be performed in accordance with section 6, Inspection clause contained in this rider.

4. CONSTRUCTION PAYMENT

Payment to the Lessor for the work outlined herein shall be in the amount of $ .

Payment shall be made after the Contracting Officer accepts the work, as follows:

By payment of the entire fixed sum in addition to and at the time the first month's rent is paid. If the work is not completed at that time, payment of the entire fixed sum will be made within 30 days of the later of the date the invoice for the completed work is received or the date the Contracting Officer accepts the work.

# U.S. Postal Service
## Facilities Department
## Construction Rider - Existing Buildings

UNITED STATES POSTAL SERVICE

### 5. TERMINATION FOR DEFAULT - DAMAGES FOR DELAY - TIME EXTENSIONS

a. If the contractor refuses or fails to acquire the site, if applicable, or to prosecute the work with such diligence as will ensure its completion within the time specified in this contract, or any extension thereof, or fails to complete said work within such time, the Postal Service may, by written notice to the contractor, terminate his right to proceed with the work. Whether or not the contractor's right to proceed with the work is terminated, he and his sureties must be liable for any damage to the Postal Service resulting from his refusal or failure to complete the work within the specified time.

b. The contractor's right to proceed shall not be so terminated nor the contractor charged with resulting damage if:

(1) The delay in the completion of the work arises from unforeseeable causes beyond the control and without the fault of negligence of the contractor, including but not restricted to acts of God, acts of the public enemy, acts of Government in either its sovereign or contractual capacity, acts of another contractor in the performance of a contract with the Postal Service, fires, floods, epidemics, quarantine restrictions, strikes, freight embargoes, unusually severe weather, or delays of subcontractors or suppliers arising from unforeseeable causes beyond the control and without the fault or negligence of both the contractor and such subcontractors or suppliers; and

(2) The contractor, within 10 days from the beginning of any such delay (unless the contracting officer grants a further period of time before completion and acceptance under the contract), notifies the contracting officer in writing of the causes of delay.

c. The contracting officer must ascertain the facts and the extent of the delay and extend the time for completing the work when, in his judgment, the findings of facts justify such an extension, and his findings of fact shall be final and conclusive on the parties, subject to appeal as provided in the clause of this contract entitled "Claims and Disputes." Pending final decision on an extension of time hereunder, the contractor must proceed diligently with the performance of the contract and in accordance with the contracting officer's decision. Inability to comply with state, city, or local construction or zoning laws or ordinances, or with restrictive covenants, shall not normally be regarded as an unforeseeable cause. Provided, however, that if the Successful Offeror shall acquire the demised property, an interest therein or an option to purchase the same by or through assignment or transfer from the Postal Service, and if in the course of such (acquisition the Successful Offeror is unable to comply with such) laws or ordinances or restrictive covenants, then this agreement shall be and become terminated with no further liability on the part of either party unless such laws or ordinances or restrictive covenants are suitably changed or removed in accordance with an option or other agreement with the owner which so provides.

d. The rights and remedies of the Postal Service provided in this clause are in addition to any other rights and remedies which may be available to the Postal Service by law or under this agreement.

### 6. INSPECTION

a. The Lessor must, without charge, replace any material, correct any workmanship or supply omitted work found by the Postal Service not to comply with the contract requirements, unless in its interest the Postal Service consents to accept such material or workmanship or omitted work with an appropriate adjustment in the rental.

b. The premises and building must be accessible for inspection by the authorized representative of the contracting officer to determine whether contractual requirements are being met during construction and/or acceptance inspection of construction of the facility. Failure of the Postal Service to identify deficient work or materials shall not shift the responsibility for correction of such deficient work or materials to the Postal Service.

c. If the Lessor does not replace rejected material, correct rejected workmanship, or supply omitted work, then in addition to any other remedies available to it, the Postal Service may, by contract or otherwise, replace such material or workmanship, or supply such omitted work and charge the cost thereof to the Lessor by a deduction from the rentals as they accrue.

d. In the absence of a specific agreement, time allowed for completion of any work required under the provisions of this paragraph is limited to thirty (30) days.

e. The Lessor must give the contracting officer at least thirty (30) days advance written notice of the date the work will be fully completed and ready for acceptance inspection and tests; the Lessor shall be charged with any additional costs of inspection when material and workmanship are not ready at the time specified by the Lessor for its inspection.

### 7. STORAGE OF EQUIPMENT

The Postal Service may, without additional compensation, store, assemble and install Postal Service-owned furnishings and equipment in the premises at any time prior to completion date. Such action by the Postal Service shall not be construed as constituting occupancy under the Lease. Such action must be accomplished in a manner which will not unreasonably interfere with the lessor's completion of work under this agreement.

### 8. PAYMENT FOR LABOR AND MATERIALS

The Lessor agrees to post at the job site in a prominent place, a photostat certified copy of the bond, where it can easily be seen by all persons who have furnished, or have been requested to furnish labor, material, or both, used or reasonably required for use in the performance of this agreement.

### 9. LICENSES, PERMITS, SAFETY, INDEMNIFICATION

a. The offeror is, without additional expense to the Postal Service, responsible for identifying and complying with zoning requirements, if applicable, obtaining any necessary licenses and permits required for privately owned buildings, and for complying with any applicable Federal, State, and municipal laws, codes, and regulations, in connection with the performance required under or related to this contract. The contractor must take proper safety and health precautions to protect the work, the workers, the public and the property of others. The contractor is responsible also for all materials delivered and work performed until completion and acceptance of the entire construction work, except for any completed unit of construction that may have been accepted.

b. The offeror agrees to indemnify and hold harmless, the Postal Service, its officers, agents, representatives, and employees from all claims, loss, damage, actions, causes of action, expense and/or liability, including the costs of defense, resulting from, brought for, or on account of any personal injury or death or property damage received or sustained by any person or property, growing out of, occurring, or attributable to any work performed under or related to this contract.

### 10. COMPLIANCE BY STATES WITH LABOR STANDARDS

The offeror agrees to comply with the Contract Work Hours and Safety Standards Act - Overtime Compensation, and Davis-Bacon Act clauses of this contract, and with applicable OSHA standards, to provide for such compliance in subcontracts with States or political subdivisions thereof, and to insert the clauses in all subcontracts with private persons or firms.

# U.S. Postal Service
## Facilities Department
## Construction Rider - Existing Buildings

UNITED STATES POSTAL SERVICE

### 11. SITE

Offerors must examine the site and be thoroughly acquainted with conditions thereon. The Lessor will be responsible for site conditions including but not limited to subsurface or latent physical conditions or unknown physical conditions of an unusual nature differing materially from those ordinarily encountered.

1-18-94 INITIAL OF PROPONENT 1/18/94 B
DATE

### 12. BONDS

[illegible] bonds have been furnished and the Lessor has received [illegible] notice from the Contracting Officer that the bonds are acce[illegible], provided, however, that if this agreement provides for assig[illegible] to the Lessor of an option to purchase and, if the option would [illegible] prior to the Lessor's submission of bonds and receipt of no[illegible] acceptability, and if the option cannot be extended, the opt[illegible] be assigned prior to the Lessor's submission of bonds and [illegible] of notice of acceptability and the Lessor must exercise the option [illegible] and remain obligated to furnish acceptable bonds within the time [illegible]

### 13. DISPUTES CONCERNING LABOR STANDARDS

Disputes arising out of the labor standards provisions of this contract will not be subject to the Claims and Disputes clause of this contract. Such disputes must be resolved in accordance with the procedures of the Department of Labor set forth in 29 CFR Parts 5, 6, and 7. Disputes within the meaning of this clause includes disputes between the lessor (or any of the lessor's subcontractors) and the contracting agency, the U. S. Department of Labor, or the employees or their representatives.

### 14. SAFETY AND HEALTH STANDARDS

a. Materials, supplies, articles, or equipment manufactured or furnished under this contract or order must conform to the Occupational Safety and Health Standards (29 CFR 1910) pursuant to authority in the Occupational Safety and Health Act of 1970 (OSHA), and to other safety and health requirements specified in this contract or order.

b. If no OSHA standard exists, Federal or other nationally recognized standards apply. Copies of current Occupational Safety and Health Standards are available from regional and/or area offices of the U. S. Department of Labor, Occupational Safety and Health Administration.

c. If this contract or order contains a Postal Service standard and an OSHA standard covering the same general area of applicability, the Postal Service standard governs and takes precedence, unless the OSHA standard contains more rigorous or stringent safety requirements, in which case the OSHA standard governs and takes precedence.

d. Upon delivery of the first article under the contract or order, or if none, upon delivery of the first production quantity, the contractor must execute a certification in a form acceptable to the contracting officer, attesting to the conformance of the delivered items to the requirements of this clause.

### 15. CONTRACT WORK HOURS AND SAFETY STANDARDS ACT—OVERTIME COMPENSATION

a. *Overtime Requirements.* No contractor or subcontractor contracting for any part of the contract work may require or permit any laborer or mechanic to work more than 40 hours in any workweek on work subject to the provisions of the Contract Work Hours and Safety Standards Act, unless the laborer or mechanic receives compensation at a rate not less than one-and-one-half times the laborer's or mechanic's basic rate of pay for all such hours worked in excess of 40 hours.

b. *Violation, Liability for Unpaid Wages, and Liquidated Damages.* In the event of any violation of paragraph a above, the contractor and any subcontractor responsible for the violation are liable to any affected employee for unpaid wages. The contractor and subcontractor are also liable to the Postal Service for liquidated damages, which will be computed for each laborer or mechanic at $10 for each day on which the employee was required or permitted to work in violation of paragraph a above.

c. *Withholding for Unpaid Wages and Liquidated Damages.* The contracting officer may withhold from the contractor, from any moneys payable to the contractor or subcontractor under this or any other contract with the same prime contractor, or any other federally-assisted contract subject to the Contract Work Hours and Safety Standards Act which is held by the same prime contractor, sums as may administratively be determined necessary to satisfy any liabilities of the contractor or subcontractor for unpaid wages and liquidated damages pursuant to paragraph b above.

d. *Records.* The contractor or subcontractor must maintain for three years from the completion of the contract for each laborer and mechanic (including watchmen and guards) working on the contract payroll records which contain the name, address, social security number, and classification(s) of each such employee, hourly rates of wages paid, number of daily and weekly hours worked, deductions made, and actual wages paid. The contractor or subcontractor must make these records available for inspection, copying, or transcription by authorized representatives of the contracting officer and the Department of Labor, and must permit such representatives to interview employees during working hours on the job. (The Department of Labor information collection and recordkeeping requirements in this paragraph d have been approved by the Office of Management and Budget under OMB control numbers 1215-0140 and 1215-0017.)

e. *Subcontracts.* The contractor must insert paragraphs a through d of this clause in all subcontracts, and must require their inclusion in all subcontracts at any tier.

### 16. CONTRACT WORK HOURS AND SAFETY STANDARDS ACT—SAFETY STANDARDS

a. To the extent that the work includes construction, alteration, repair, painting, or decorating, the Lessor may not require any laborer or mechanic to work in surroundings or under conditions that are unsanitary, hazardous, or dangerous to the laborer's or mechanic's health or safety, as provided under standards promulgated by the Secretary of Labor under the authority of 40 U.S.C. 333 (see 29 CFR 1910 and 1926).

b. If the Lessor fails to comply with this clause, the Postal Service, at its discretion, may cancel this Lease, contract for the balance of the work or term, and charge to the lessor any additional costs incurred.

c. The Lessor agrees to insert this clause, including this paragraph c, in all subcontracts and to require its inclusion in all subcontracts at any tier. The term "Lessor," as used in this clause in any subcontract, is deemed to refer to the lower-tier subcontractor.

### 17. OMISSIONS AND DEFECTS

If omissions and defects from the contract requirements and approved construction plans remain in the facility on the scheduled Postal Service date of beneficial occupancy, the Postal Service may take beneficial occupancy and notify the offeror in writing of the obligation to complete or correct the remaining deficiencies or defects by a designated date. The offeror must complete or correct the omissions or defects by the designated date or the Postal Service may correct the omissions or defects and deduct the cost thereof from future rental due. If the Postal Service has maintenance responsibilities under this lease, prior to Postal Service assumption of maintenance responsibility for the leased facility, the Lessor is responsible for correcting/completing all maintenance deficiencies/defects.

# U.S. Postal Service
## Facilities Department
## Construction Rider - Existing Buildings

UNITED STATES POSTAL SERVICE

### 18. CONVICT LABOR

In connection with the work under this contract, the contractor agrees not to employ any person undergoing sentence of imprisonment, except as provided by Public Law 89-176, September 10, 1965 (18 U.S.C. 4082(c)(2)) and Executive Order 11755, December 29, 1973.

### 19. WARRANTY (CONSTRUCTION)

a. If the Postal Service has maintenance responsibility under a maintenance rider, the Lessor warrants that all work will be free from defective or inferior materials, equipment, and workmanship.

b. If, within one year of acceptance for beneficial occupancy by the Postal Service, the contracting officer finds that warranted work needs to be repaired or changed because of materials, equipment, or workmanship were inferior, defective, or not in accordance with the contract terms, the Lessor must promptly and without additional expense to the Postal Service-

1. Place in a satisfactory condition all of the warranted work;

2. Satisfactorily correct all damage to equipment, the site, the building, or its contents that is the result of such unsatisfactory work; and

3. Satisfactorily correct any work, materials, or equipment disturbed in fulfilling the warranty.

c. Should the Lessor fail to proceed promptly in accordance with the warranty, the Postal Service may have the work performed and deduct the cost thereof from future rental payments.

d. The Lessor must obtain each transferrable guarantee or warranty of equipment, materials, or installation furnished by any manufacturer, supplier, or installer in the ordinary course of the business or trade. The Lessor must obtain and furnish to the Postal Service all information required to make any such guarantee or warranty legally binding and effective, and must submit both the information and the guarantee or warranty to the Postal Service in sufficient time to permit the Postal Service to meet any time limit requirements specified in the guarantee or warranty or, if no time limit is specified, before completion and acceptance of all work under this contract.

### 20. DESIGN AND APPROVAL REQUIREMENTS

a. Unless otherwise exempted within this contract, the Lessor must employ the services of an architect-engineer, who is licensed to practice in the state in which the facility is located, to prepare for the approval of the Postal Service, complete specifications and working drawings including architectural, structural, mechanical, electrical and site improvement work for the construction of the facility in accordance with all requirements included in this agreement. All final drawings must bear the appropriate registration seal. All fees or charges required for architect/engineer services, for necessary permits or approvals, for connection charges, or for similar fees incidental to construction of the facility must be at Lessor's sole cost and expense.

b. All submissions required for approval by the Postal Service must be correlated, checked and signed by a responsible official of the architect-engineer's firm and must be accompanied by a certification in the following format:

"I certify that all phases of this project (1) have been coordinated and checked for accuracy, (2) are complete in accordance with all applicable requirements, and (3) are in compliance with local building codes and Postal Service requirements."

c. All improvements, including new building(s) and all appurtenances thereto, must be designed and constructed in conformity with all applicable local laws, ordinances, and regulations which relate to construction, safety and sanitation or, in the absence of such codes, ordinances or regulations, in conformity with one of the following codes: Southern Building Code Congress; Southern Standard Building Code; International Conference of Building Officials; Uniform Building Code; Building Officials Conference of America, Inc., or Basic Building Code. The final drawings must be signed and sealed by the architect-engineer with this statement:

"This building has been designed and must be constructed in strict accordance with the ____ building (regulations) (code) dated ____."

d. The minimum requirements established by this agreement must not be construed as lowering the standards established by the local, county, or state laws, ordinances, or regulations. When such local, county or state requirements are more stringent than the minimum requirements set forth in this agreement, the more stringent requirements must govern.

e. Approval by the Postal Service of any drawings and specifications constitutes approval of general arrangement only and is not to be construed as waiving or changing any requirements set forth in this agreement unless a deviation, waiver or other change is specifically identified and approved by the contracting officer.

f. The Lessor must be responsible, in all cases, for the proper design and coordination of architectural, structural, plumbing, electrical, heating, ventilation, air conditioning, site elements, etc., for the facility.

g. Unless otherwise specified, no construction activity at the site may be commenced until the lessor has received written notice from the contracting officer of approval of final drawings and specifications. Changes or modifications which may be required during construction must be approved in writing by the contracting officer prior to proceeding with such changes.

# U.S. Postal Service

## Mortgagee's Agreement

(To be executed and attached to lease before it is recorded)

Facility Name PALMS WEST BRANCH - WEST PALM BEACH, FL 33411-4337

The undersigned, Greyrock Capital Group Inc. holder(s) of a mortgage in the sum of $ 13,000,000 on the property situated at:

10299 SOUTHERN BLVD
WEST PALM BEACH, FL 33411-4337

hereby consent(s) to the leasing of said property to the U.S. Postal Service and agree(s) for itself, its successors, executor administrators, and assigns that in the event it should become necessary to foreclose said mortgage the mortgagee w cause the sale of said premises to be made subject to said lease.

Greyrock Capital Group Inc.
Mortgagee Company

Leslie S. Brown
Witness

By: James A. Kaufman
Signature of Mortgagee's Officer

Its Authorized Signatory
Title of Mortgagee's Officer

P.O. Box 120013
Street Address

Stamford, CT 06912-0013
City, State and ZIP+4

Subscribed and Sworn to before me, a notary public, in and for County, State of Connecticut this 6th day of February, 1995.

Mary S. Brassman
Notary Public

My commission expires ________.

MARY S. BRASSMAN
NOTARY PUBLIC
MY COMMISSION EXPIRES MAR. 31, 1998

U.S. Postal Service

## Mortgagee's Agreement

(To be executed and attached to lease before it is recorded)

Facility Name PALMS WEST BRANCH - 10301 SOUTHERN BLVD
WEST PALM BEACH, FL 33411-9998 PALM BEACH COUNTY

The undersigned, Nomura Asset Capital Corporation ~~UNITED STATES TRUST COMPANY OF NEW YORK~~ holder(s) of a mortgage in the sum of $16,700,000 on the property situated at:

10301 SOUTHERN BLVD
WEST PALM BEACH, FL 33411-9998

hereby consent(s) to the leasing of said property to the U.S. Postal Service and agree(s) for itself, its successors, executors, administrators, and assigns that in the event it should become necessary to foreclose said mortgage the mortgagee will cause the sale of said premises to be made subject to said lease.

Mortgagee Company

Witness

By: [signature]
Signature of Mortgagee's Officer

Its Vice President
Title of Mortgagee's Officer

Street Address

City, State and ZIP+4

Subscribed and Sworn to before me, a notary public, in and for County, State of New York,
this 19 day of January 1996.

[signature]
Notary Public

My commission expires Oct 25, 1995.

Notary ... New York
... Commission Expires Oct. 25, 1995

August 1991

U.S. Postal Service

# DESIGNATION OF EMERGENCY REPAIR PERSONNEL

| | |
|---|---|
| Return two completed, signed copies of this form to:<br>BEN HART<br>REAL ESTATE SPECIALIST<br>ATLANTA FSO<br>4000 DEKALB TECH PKWY STE 300<br>ATLANTA GA 30340-2799 | Postal Unit<br>PALMS WEST BRANCH<br>Street Address<br>10397 SOUTHERN BLVD<br>City, State, ZIP+4<br>WEST PALM BEACH, FL 33411-9998 |
| Owner ROBERT L. MILLER D/B/A SOUTHERN CENTERS, 10397 SOUTHERN BLVD, WEST PALM BEACH, FL 33411 | |

Contact the following repair personnel for emergency repairs for those services that are my responsibility under the terms of the lease, when I (or my agent) cannot be reached after a reasonable period of time at Area Code & Telephone (407) 790-1414

In the event the Postal Service is unable to contact the designated emergency repair person or such repair person is unavailable to perform necessary emergency repairs, the Postal Service is authorized to arrange for such repairs by repair personnel selected by the Postal Service with cost thereof to be reimbursed by the lessor.

| | |
|---|---|
| For Roofing/ Structural Emergencies ☐ (Check If Not Applicable) | SAME AS ABOVE<br>(407) 790-1414 |
| For Electrical Emergencies ☒ (Check If Not Applicable) | |
| For Plumbing Emergencies ☒ (Check If Not Applicable) | |
| For Heating, Ventilating and Air-Conditioning Emergencies ☒ (Check If Not Applicable) | |
| For Other Emergencies (Windows, Doors, Locks, Etc.) ☒ (Check If Not Applicable) | |

Sign Original and Copy

| | | |
|---|---|---|
| This letter is not intended to, nor does it in any way, increase my responsibilities as owner (or agent w/ owner) of the property to the occupant, the U.S. Postal Service. | Signature of Owner or Owner's Agent [signature] | Date 1/18/94 |
| | Name (Typed or Printed) ROBERT L. MILLER | |
| | Street Address 10397 SOUTHERN BLVD | |
| | City, State, ZIP+4 WEST PALM BEACH, FL 33411-43 | |

October 1991 ☐ Postmaster ☐ MSC ☐ Division

# United States District Court

Southern District of Florida

THE CENTRE ON 441, LLLP,

Plaintiff,

v.

UNITED STATES POSTAL SERVICE,

Defendant.

**SUMMONS IN A CIVIL CASE**

CASE NUMBER:________________________

**TO: R. Alexander Acosta**
**U.S. Attorney for the Southern District of Florida**
**500 East Broward Blvd.**
**Suite 700**
**Fort Lauderdale, FL 33394**

**YOU ARE HEREBY SUMMONED** and required to serve upon **PLAINTIFF'S ATTORNEY:**

**Kenneth M. Curtin, Esquire**
**Ruden, McClosky, Smith, Schuster & Russell, P.A.**
**222 Lakeview Avenue, Suite 800**
**West Palm Beach, FL 33401**
**(561) 838-4511**

an answer to the complaint which is herewith served upon you, within sixty (60) days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

**Clarence Maddox, Clerk of Court**

Date:______________________________ By:______________________________
Deputy Clerk

AO 440 (Rev. 10/2002) Summons in a Civil Case (Reverse)

## RETURN OF SERVICE

| Service of the Summons and Complaint was made by me [1] | DATE |
|---|---|
| NAME OF SERVER (PRINT) | TITLE |

*Check one box below to indicate appropriate method of service*

G Served personally upon the defendant. Place where served: ____________________

G Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with whom the summons and complaint were left: ____________________

G Returned unexecuted: ____________________

G Other (*specify*): ____________________

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL $0.00 |
|---|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on ____________________ ____________________

Date — Signature of Server

____________________

Address of Server

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

Ruden McClosky

222 LAKEVIEW AVENUE
SUITE 800
WEST PALM BEACH, FLORIDA 33401

(561) 838-4511
FAX: (561) 514-3411
KENNETH.CURTIN@RUDEN.COM

April 26, 2007

**Via U.S. Mail, Certified Mail & Federal Express**
Bruce D. Bland and/or Contracting Officer
United States Postal Service
Facilities Service Office
4000 Dekalb Tech. Pkwy., Suite 300
Atlanta, Georgia 30340-2799

**Via U.S. Mail, Certified Mail & Federal Express**
Gerald Fogel
U.S. Postal Service SEFSO
1735 North Brown Road, Suite 200
Lawrenceville, Georgia 30043-8153

RE: Dispute Under Contract Disputes Act of 1978 (41 U.S.C. 601-613)
Lease Between USPS & The Centre On 441, LLLP
Post Office Address: Palms West Branch
1031 Southern Boulevard
West Palm Beach, Florida 33411-9998
Palm Beach County, Florida
(119465-039)

Dear Contracting Officer:

The above referenced law firm represents The Centre On 441, LLLP ("441 Centre"), the current owners of the Shopping Center located at 1031 Southern Boulevard, West Palm Beach, Florida 33411-9998 ("Shopping Center"). This letter shall operate as Centre 441's written claim and demand, pursuant to the Contract Disputes Act of 1978, in relation to a lease and breach of said lease between 441 Centre and the United States Postal Service ("USPS") as to a unit at the Shopping Center. In accordance with Section 605, U.S.C., 441 Centre requests that the Contracting Office please issue a written decision on this claim and demand within 60 days or notify the undersigned counsel of the time within which a decision will be issued.

**Underlying Facts & Claims**

On or about January 18, 1994, the USPS and Robert L. Miller d/b/a Southern Centers ("Miller") entered into a Facilities Department Lease whereby the USPS leased space at the

EXHIBIT B

that the USPS is using for the platform, net floor space, and sidewalks is either exactly as in the Lease or within an acceptable range to 441 Centre. However, the USPS is consistently exceeding the square footage allowed under the Lease for parking and maneuvering. Attached as **Exhibit "B"** is a true and correct copy of the survey of the overall Shopping Center with the Palms West Branch in the upper northeast corner. Further, attached as **Exhibit "C"** is a condensed version of the same survey, but outlining only the Palms West Branch.

The Surveyor measured the square footage of the surrounding parking and maneuvering spaces around the Palms West Branch and delineated the 67,200 square footage allowed under the Lease. This square footage is outlined in both Exhibits "B' and "C." As you can see from the surveys, the parking and maneuvering square footage allowed under the Lease encompasses the whole of the area in back of the actual physical location of the Palms West Branch and part of the back parking lot directly to the west of the Palms West Branch.

441 Centre also on a regular basis inspected the parking lot and maneuvering areas of the Shopping Center directly behind the Palms West Branch to determine how much square footage the USPS is actually using for parking and maneuvering. This investigation revealed that the USPS is employing far in excess of the square footage allowed for parking and maneuvering. In fact, 441 Centre discovered that the USPS is using not only the contracted for 67,200 square feet, but also approximately an additional 25,658 square feet of parking directly west of the allocated area and another additional 13,734 square feet directly to the southeast of the allocated area. This equates to an additional 39,392 square feet or approximately a 59% increase above and in violation of the Lease. 441 Centre has photographed the use of this additional square footage in violation of the Lease. The photographs clearly demonstrate that USPS employees, trucks, and contractors are consistently violating the Lease by using additional and excessive square footage for parking and maneuvering. Attached as **Composite Exhibit "D"** are true and correct copies of the photographs taken of the USPS' use of this additional square footage. Further, attached as **Exhibit "E"** is a color copy of the survey delineating in green the contracted for square footage under the Lease and in red the additional square footage being used by the USPS in violation of the Lease.

**Damages & Requested Relief**

As a result of the USPS' breach of the Lease, 441 Centre has been damaged and continues to be damaged. There are several vacant units directly to the east and west of the Palms West Branch. 441 Centre is currently negotiating with several prospective tenants to rent these units, however, the lack of parking and maneuverability in and around these units have severely handicapped 441 Centre's ability not only to find a tenant, but also to obtain the highest rental value for the units. While the exact amount of monetary damages is unknown, the damages continue to accumulate and could easily be in excess of $50,000.00. Furthermore, 441 Centre requests that the USPS immediately cease and desist from using more than the contracted for square footage allowed under the Lease.

WPB:304593:2

**Conclusion**

In conclusion, the Lease is clear and unambiguous in that it allows use by the USPS of a specific amount of square feet for parking and maneuvering. The USPS has consistently and flagrantly violated the square footage restriction causing harm to 441 Centre. The breaches of the Lease by the USPS are particularly egregious considering the fact that 441 Centre has offered the USPS numerous possible solutions to meet, due to demographic increases, the expanded operations of the Palms West Branch. These solutions include moving the Palms West Branch to a different location with sufficient parking and maneuverability. However, these overtures and possible solutions have been rebuffed by the USPS who, thereafter, has continued to violate the Lease's provisions to the detriment of 441 Centre. As a result, 441 Centre requests that the USPS immediately cease and desist from employing more square feet than allowed under the Lease for parking and maneuvering and award damages to 441 Centre due to he USPS' breach of the Lease.

Sincerely,

Kenneth M. Curtin

cc:
Via U.S. Mail, Certified Mail and Federal Express
Marilyn Davis
United States Postal Office
3200 Summit Blvd.
West Palm Beach, FL 33406

WPB:304593:2

## Certification

I am the President of the general partner of the partnership known as The Centre On 441, LLLP, and as such certify that the above claim is made in good faith, that the supporting data is accurate and complete to the best of my knowledge and belief, and that the amount requested accurately reflects the amount for which The Centre On 441, LLLP believes the United States Parcel Service is liable.

THE CENTRE ON 441, LLLP

By: Centre-441, Inc.
its general partner

By:____________________
Richard D. Gertz, President

STATE OF FLORIDA )
COUNTY OF PALM BEACH )

I HEREBY CERTIFY that on this day, before me, an officer duly authorized in the State aforesaid and in the County aforesaid to take acknowledgments, the foregoing instrument was acknowledged before me by **Richard D. Gertz,** as President of Centre-441, Inc., as the general partner of The Centre On 441, LLLP, freely and voluntarily on behalf of said limited partnership. He is personally known to me ✓ or who has produced ________________ as identification.

WITNESS my hand and official seal in the County and State last aforesaid this 24th day of April, 2007.

____________________
Notary Public
Typed, printed or stamped name of Notary Public
My Commission Expires:

STEVEN R. PARSON
MY COMMISSION # DD 338733
EXPIRES: November 18, 2008
Bonded Thru Notary Public Underwriters

WPB:304593:2

LAW DEPARTMENT
ST. LOUIS OFFICE

UNITED STATES
POSTAL SERVICE

**VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED**

June 5, 2007

Kenneth M. Curtin, esq.
Ruden, McClosky, Smith, Schuster & Russell
222 Lakeview Ave., Ste. 800
West Palm Beach, FL 33401

**RE: Lease Between USPS & The Centre On 441, LLLP**
**Palms West Branch, 10301 Southern Blvd., West Palm Beach, FL 33411**

Dear Mr. Curtin:

I have been provided a copy of your letter dated April 26, 2007. Please be advised that the letter does not constitute a proper claim pursuant to the Contract Disputes Act ("CDA"), 41 U.S.C. 601 et seq., because your client requests payment but fails to specify a sum certain.

Sincerely,

Carrie M. Branson
Attorney

Cc: Jerry Fogel, USPS

Date Received
Copies Distributed
JUN 12 2007
Calendared by:

EXHIBIT
C

PO BOX 66640
ST. LOUIS, MO 63166-6640
PH: 314-872-5120
FAX: 314-872-5192

Ruden McClosky

222 LAKEVIEW AVENUE
SUITE 800
WEST PALM BEACH, FLORIDA 33401

(561) 838-4511
FAX: (561) 514-3411
KENNETH.CURTIN@RUDEN.COM

June 27, 2007

**Via U.S. Mail, Facsimile, and Certified Mail**
Carrie M. Branson, Esquire
P.O. Box 66640
St. Louis , MO. 63166-6640

RE: Lease Between USPS & The Centre On 441, LLLP
Post Office Address: Palms West Branch
1031 Southern Boulevard
West Palm Beach, Florida 33411-9998
Palm Beach County, Florida
(119465-039)

Dear Mrs. Branson:

In relation to the above referenced Lease, as you know, I represent The Centre On 441, LLLP ("441 Centre"). I am in receipt of your letter of June 5, 2007 wherein you state that my letter on behalf of 441 Centre dated April 26, 2007 fails to constitute a proper claim pursuant to the Contract Disputes Act ("CDA"), 41 U.S.C. 601, et. seq. This is allegedly because 441 Centre fails to specify a sum certain. Please note, without waiving any rights or agreeing with your allegation, 441 Centre will not seek any monetary damages, but rather will merely seek a declaratory and injunctive relief to enforce the terms and conditions of the Facilities Department Lease dated January 18, 1994 ("Lease") at issue in my letter of April 26, 2007.

In other words, 441 Centre hereby drops any demand for monetary relief in relation to the breach of the Lease by the United States Postal Service ("USPS"). In particular, 441 Centre will only seek a declaratory judgment as to the rights and obligations of the parties under the Lease as the parking and maneuvering square footage allocated to the USPS. Additionally, 441 Centre will also seek injunctive relief to prevent the USPS from using any additional parking and maneuvering square footage not allocated to the USPS under the Lease. To be clear, 441 Centre will not seek any monetary damages whatsoever from the USPS for the USPS's violation of the Lease in relation to the use of additional parking and maneuvering square footage in contradiction to the Lease. I believe this alleviates the concerns expressed in your letter of June 5, 2007. As a result, 441 Centre requests that the USPS immediately cease and desist from employing more square feet than allowed under the Lease for parking and maneuvering.

WPB:316222:1

ALL-STATE LEGAL® EXHIBIT D

I believe the Contracting Officer, Mr. Jerry Fogel, and my clients are in direct discussions on possible solutions to alleviate the USPS' need for additional parking and maneuvering square footage to meet the expanded operations of the USPS Branch at issue. While hopefully these discussions will be fruitful, these discussions should in no manner be interpreted as a waiver of any rights of 441 Centre under the CDA or to file suit against the USPS for declaratory or injunctive relief. Further, due to the fact that 441 Centre is only seeking declaratory and injunctive relief and not monetary damages, nothing in this letter shall be taken as a waiver by 441 Centre that the district court has jurisdiction over this matter and that the CDA does not divest the district court of jurisdiction.

As a result, I would request that you please inform me of the USPS's decision or give me a timeframe in which the USPS will make a decision in regard to 441 Centre's claims of breach of the Lease and requested declaratory and injunctive, but not monetary, relief.

Sincerely,

Kenneth M. Curtin

cc:

Richard Gertz, Jr.

WPB:316222:1

SOUTHEAST FACILITIES SERVICE OFFICE

UNITED STATES
POSTAL SERVICE

August 29, 2007

**VIA FACSIMILE AND CERTIFIED MAIL, RETURN RECEIPT REQUESTED**
#7004 1350 0002 0418 1639

Kenneth M. Curtin, esq.
Ruden, McClosky, Smith, Schuster & Russell
222 Lakeview Ave., Ste. 800
West Palm Beach, FL 33401
Fax: 561-514-3411

**RE: Lease Between USPS & The Centre On 441, LLLP**
**Palms West Branch, 10301 Southern Blvd., West Palm Beach, FL 33411**

Dear Mr. Curtin:

I have been provided a copy of your letter to Carrie Branson dated June 27, 2007, in which you state that your client, The Centre On 441, LLLP ("Lessor"), now seeks only declaratory and injunctive relief in relation to the Postal Service's alleged overusage of parking at the above-referenced facility. The Postal Service acknowledges that postal and employee vehicles currently use more than the 67,200 square feet of dedicated parking and maneuvering space allotted under the Lease. Please be advised that the Postal Service is working diligently to resolve the situation as quickly as possible. In furtherance thereof, the Postal Service has discussed potential solutions with Lessor in good faith. While the Postal Service recognizes the importance of reaching a prompt resolution, it is essential that the Postal Service maintain uninterrupted service to the West Palm Beach community. Therefore, the Postal Service is unable to immediately alter its operations at the subject facility. However, the Postal Service is in the process of evaluating all available alternatives and will take action as soon as it is practicable to do so.

This is the final decision of the contracting officer pursuant to the Contract Disputes Act of 1978 and the clause of your contract entitled Claims and Disputes. You may appeal this decision to the Postal Service Board of Contract Appeals by mailing or otherwise furnishing written notice (preferably in triplicate) to the contracting officer within 90 days from the date you receive this decision. The notice should identify the contract by number, reference this decision, and indicate that an appeal is intended. Alternatively, you may bring an action directly in the United States Court of Federal Claims within 12 months from the date you receive this decision.

Date Received
Copies Distributed
SEP - 5 2007
Calendared by:

EXHIBIT
E

1735 NORTH BROWN ROAD, SUITE 200
LAWRENCEVILLE, GA 30043-8153
PHONE: 678-442-6001
FAX: 678-442-6078

In taking an appeal to the Board of Contract Appeals, you may include in your notice of appeal an election to proceed under the Board's Small Claims (expedited) procedure, which provides for a decision within approximately 120 days, or an election to proceed under the Board's accelerated procedure, which provides for a decision within approximately 180 days. If you do not make an election in the notice of appeal, you may do so by written notice at anytime thereafter.

Sincerely,

Jody Sloan
Contracting Officer

Cc: Carrie Branson, USPS Law Dept.

Ruden McClosky

222 LAKEVIEW AVENUE
SUITE 800
WEST PALM BEACH, FLORIDA 33401

(561) 838-4511
FAX: (561) 514-3411
KENNETH.CURTIN@RUDEN.COM

November 14, 2007

**Via U.S. Mail, Certified Mail, & Facsimile (678-442-6078)**
Jody Sloan
Contracting Officer
1735 North Brown Road, Suite 200
Lawrenceville, Georgia 30043-8153

RE: Lease Between USPS & The Centre On 441, LLLP
Post Office Address: Palms West Branch
1031 Southern Boulevard
West Palm Beach, Florida 33411-9998
Palm Beach County, Florida
(119465-039)

Dear Mrs. Sloan:

In relation to the above referenced Lease, as you know, I represent The Centre On 441, LLLP ("441 Centre"). This letter is an extension of my letters on behalf of 441 Centre dated April 26, 2007, June 27, 2007, and July 11, 2007 concerning the breach of the Facilities Department Lease dated January 18, 1994 ("Lease") by the United States Postal Service ("USPS") and in response to your letter dated August 29, 2007.

As you know, the USPS has continuously violated the Lease in relation to the use of parking and maneuvering square footage in excess of that allocated to the USPS under the Lease. I have previously enclosed numerous pictures and other documentation demonstrating that the USPS, despite numerous warnings, continues to violate the parking and maneuvering square footage allocations. In fact, the USPS is not only using excessive square footage, but is also allowing vehicles to double park which blocks not only other vehicles, but also fire lanes, thereby creating a hazard for the Shopping Center. As a result, 441 Centre requested that the USPS immediately cease and desist utilizing more square feet than allowed under the Lease for parking and maneuvering and to not block appropriate fire and safety lanes.

On August 29, 2007, you responded by admitting that the USPS was in violation of the Lease in relation the excessive use of parking and maneuvering square footage. Nevertheless, the USPS refused to cease and desist the continued violations of the Lease due to the assertion that it is essential for the USPS to maintain uninterrupted service to the West Palm Beach Community.

WPB:345657:1

EXHIBIT F

Meanwhile, you stated that the USPS was in the process of evaluating all available alternatives and will take action as soon as it is practicable to do so. However, you gave no deadline on when the USPS will cease and desist its violations of the Lease. In effect, you offered 441 Centre no remedy or relief from the USPS' violations of the Lease.

As a result, 441 Centre desires to amend its claim under the Contract Dispute Act ("CDA"). In particular, 441 Centre desires to add to its claim for declaratory relief that the USPS in light of the fact of the continuous and admitted violations of the Lease declare the Lease null and void and of no further force and effect. However, due to the USPS' concern to maintain uninterrupted service to the West Palm Beach Community, the USPS shall have a reasonable amount of time to vacate the Shopping Center, which time shall not to exceed more than one (1) year ("Vacate Period"). During the Vacate Period, the Lease terms will remain in effect except that the USPS shall be able to use the current amount of excessive parking and maneuvering square footage to insure uninterrupted service to the West Palm Beach Community. Further, as monetary damages and compensation for the breach of the Lease, the USPS will pay damages for its excessive use of parking and maneuvering square footage both during the Vacate Period and prior to the Vacate Period.

The damages incurred by 441 Centre commenced from the date 441 Centre purchased the Shopping Center at issue, or, in other words, February 2, 2007, and shall continue throughout the Vacate Period up until the USPS vacates the Shopping Center. The damages incurred by 441 Centre are approximately $589,600.00/ year or $1,615.34/day. The damage calculation is as follows:

1. As per my letter of April 26, 2007, the USPS has currently and consistently been using 39,392 square feet of excess parking and maneuvering space;
2. The excessive use of parking and maneuvering space equates to approximately 88 additional parking spaces (this is a calculation of 200 square feet per parking space and an additional 250 square feet for maneuvering, circulation, and landscaping);
3. The Village of Royal Palm Beach requires five (5) parking spaces per every 1,000 square feet of tenant space;
4. The USPS excess use of parking and maneuvering space equates to the inability to lease or construct 17,600 square feet of tenant space (1,000/5 = 17.6 * 1,000 = 17,600);
5. The current market rate for leased space is $25.00/square foot plus common area maintenance of approximately $8.50 for a total of $33.50/square foot
6. As a result, this equates to a loss to 441 Center of $589,600.00/year (17,600 * $33.50 = $589,600.00).

As a result, as of February 2, 2008, 441 Centre will have incurred $589,600.00 in damages and will continue to incur damages in the amount of $1,615.34/day until the USPS vacates the Shopping Center at the end of the Vacate Period.

WPB:345657:1

As a result, 441 Centre amends its CDA claim to request the above declaratory and monetary relief. I would request that you please inform me of the USPS's decision under the CDA or give me a timeframe in which the USPS will make a decision in regard to 441 Centre's amended claim for declaratory relief, breach of the Lease, and monetary damages.

Sincerely,

Kenneth M. Curtin

cc:

Via U.S. Mail, Facsimile, and Certified Mail
Carrie M. Branson, Esquire
P.O. Box 66640
St. Louis, MO. 63166-6640

Richard Gertz, Jr.

**Certification**

I am the President of the general partner of the partnership known as The Centre On 441, LLLP, and as such certify that the above claim is made in good faith, that the supporting data is accurate and complete to the best of my knowledge and belief, and that the amount requested accurately reflects the amount for which The Centre On 441, LLLP believes the United States Parcel Service is liable.

THE CENTRE ON 441, LLLP

By: Centre-441, Inc.
its general partner

By:____________________
Richard D. Gertz, President

WPB:345657:1

STATE OF FLORIDA )
COUNTY OF PALM BEACH )

I HEREBY CERTIFY that on this day, before me, an officer duly authorized in the State aforesaid and in the County aforesaid to take acknowledgments, the foregoing instrument was acknowledged before me by Richard D. Gertz, as President of Centre-441, Inc., as the general partner of The Centre On 441, LLLP, freely and voluntarily on behalf of said limited partnership. He is personally known to me ________ or who has produced ____________ as identification.

WITNESS my hand and official seal in the County and State last aforesaid this 12 day of November, 2007.

________________________
Notary Public
Typed, printed or stamped name of Notary Public
My Commission Expires:

CHARLOTTE R. HILZEN
MY COMMISSION # DD 571054
EXPIRES: August 1, 2010
Bonded Thru Notary Public Underwriters

WPB:345657:1

As a result, 441 Centre amends its CDA claim to request the above declaratory and monetary relief. I would request that you please inform me of the USPS's decision under the CDA or give me a timeframe in which the USPS will make a decision in regard to 441 Centre's amended claim for declaratory relief, breach of the Lease, and monetary damages.

Sincerely,

Kenneth M. Curtin

cc:

Via U.S. Mail, Facsimile, and Certified Mail
Carrie M. Branson, Esquire
P.O. Box 66640
St. Louis, MO. 63166-6640

Richard Gertz, Jr.

**Certification**

I am the President of the general partner of the partnership known as The Centre On 441, LLLP, and as such certify that the above claim is made in good faith, that the supporting data is accurate and complete to the best of my knowledge and belief, and that the amount requested accurately reflects the amount for which The Centre On 441, LLLP believes the United States Parcel Service is liable.

THE CENTRE ON 441, LLLP

By: Centre-441, Inc.
its general partner

By:__________________________
Richard D. Gertz, President

WPB:345557:1

STATE OF FLORIDA )
COUNTY OF PALM BEACH )

I HEREBY CERTIFY that on this day, before me, an officer duly authorized in the State aforesaid and in the County aforesaid to take acknowledgments, the foregoing instrument was acknowledged before me by Richard D. Gertz, as President of Centre-441, Inc., as the general partner of The Centre On 441, LLLP, freely and voluntarily on behalf of said limited partnership. He is personally known to me __________ or who has produced ______________________ as identification.

WITNESS my hand and official seal in the County and State last aforesaid this 12 day of November, 2007.

______________________________
Notary Public
Typed, printed or stamped name of Notary Public
My Commission Expires:

CHARLOTTE R. HILZEN
MY COMMISSION # DD 571054
EXPIRES: August 1, 2010
Bonded Thru Notary Public Underwriters

SE FACILITIES SERVICE OFFICE
1735 NORTH BROWN ROAD
SUITE 200
LAWRENCEVILLE, GA 30043-8153

UNITED STATES
POSTAL SERVICE

**VIA FACSIMILE AND CERTIFIED MAIL # 70073020000113400053**

January 28, 2008

Kenneth M. Curtin, esq.
Ruden, McClosky, Smith, Schuster & Russell
222 Lakeview Ave., Ste. 800
West Palm Beach, FL 33401
Fax: 561-514-3411

**RE: Lease Between USPS & The Centre On 441, LLLP**
**Palms West Branch, 10301 Southern Blvd., West Palm Beach, FL 33411**

Dear Mr. Curtin:

I am in receipt of your letter dated November 14, 2007, in which you state that your client, the Centre on 441, LLLP ("Lessor"), desires to amend its claim dated April 26, 2007 (as modified by letters dated June 27, 2007 and July 11, 2007). In my previous decision regarding this matter, dated August 29, 2007, I stated that "the Postal Service acknowledges that postal and employee vehicles currently use more than the 67,200 square feet of dedicated parking and maneuvering space allotted under the Lease." This acknowledgment was based on the site plan provided by the Lessor and information available at that time. After reviewing your amended claim as well as information attained through further investigation by the Postal Service, I have decided to rescind my previous decision and replace it with the following findings.

**Discussion**

In your claim dated April 26, 2007 and your amended claim dated November 14, 2007, you allege that the Postal Service has been using 39,392 square feet of excess parking and maneuvering space. Following receipt of Lessor's amended claim, the Postal Service sent a licensed engineer to evaluate the parking lot at the Palms West Branch postal facility. The engineer found that only 122 parking spaces are captured within the Lessor's site plan. The Lessor's site plan includes 14,854 square feet of fire lane area. While some of this area may be used for maneuvering in or out of parking spaces, the entire area is off-limits to parking. The Lessor's site plan also includes several concrete dividers that cannot be used for parking or maneuvering.

The subject facility utilizes parking for long-life delivery vehicles ("LLVs") and personal vehicles. According to the Postal Service's Handbook AS-504, section 324.1, a copy of which is attached hereto, LLVs require 250 sq. ft. for parking plus maneuvering while

ALL-STATE LEGAL®
EXHIBIT
G

SE FACILITIES SERVICE OFFICE
1735 NORTH BROWN ROAD
SUITE 200
LAWRENCEVILLE, GA 30043-8153

personal vehicles require 270 sq. ft. For purposes of this analysis, I will assume that each vehicle at this facility requires 270 sq. ft. parking plus maneuvering. At peak times, when all scheduled employees and all postal vehicles are on site, the Postal Service uses 228 parking spaces (128 employee vehicles plus 100 postal vehicles), which converts to 61,560 sq. ft. parking plus maneuvering (270 x 228). The Lease entitles the Postal Service to 67,200 sq. ft. of parking plus maneuvering. Therefore, the Postal Service has clearly not exceeded the allotment of parking plus maneuvering provided for under the Lease.

**Conclusion**

You have not provided adequate support for your allegation that the Postal Service has been using 39,392 square feet of excess parking and maneuvering space. Based upon the Postal Service's investigation of this matter, it is clear that the Postal Service has not overused parking at the subject facility. Accordingly, your client is not entitled to damages, nor is it entitled to any of the other relief demanded in its November 14th amended claim or its original April 26, 2007 claim (as modified by letters dated June 27, 2007 and July 11, 2007).

This is the final decision of the contracting officer pursuant to the Contract Disputes Act of 1978 and the clause of your contract entitled Claims and Disputes. You may appeal this decision to the Postal Service Board of Contract Appeals by mailing or otherwise furnishing written notice (preferably in triplicate) to the contracting officer within 90 days from the date you receive this decision. The notice should identify the contract by number, reference this decision, and indicate that an appeal is intended. Alternatively, you may bring an action directly in the United States Court of Federal Claims within 12 months from the date you receive this decision.

In taking an appeal to the Board of Contract Appeals, you may include in your notice of appeal an election to proceed under the Board's Small Claims (expedited) procedure, which provides for a decision within approximately 120 days, or an election to proceed under the Board's accelerated procedure, which provides for a decision within approximately 180 days. If you do not make an election in the notice of appeal, you may do so by written notice at anytime thereafter.

Sincerely,

Jody Sloan

Jody Sloan
Contracting Officer

Cc: Carrie Branson, USPS Law Dept.

### 323.4 Line 12: Storage Building

If line item 12 is answered as "YES," 6 percent of the net workroom area will be calculated for holding equipment to be distributed to other facilities and also for storing infrequently used items. However, if a new storage building is not necessary, enter "NO" on line item 12. Consult with local management officials to determine actual needs. The intent of providing a separate building is to reduce construction costs.

## 324 Page 4: Parking Requirements

### 324.1 Parking Space by Size of Vehicle

Exhibit 324.1 shows the standard amount of square footage required for each type of vehicle.

Exhibit 324.1
**Standard Square Footage for Vehicle Parking Spaces**

| Type of Vehicle | Square Feet Required |
|---|---|
| Passenger and station wagon | 270 |
| 1-ton truck | 300 |
| 2-1/2-ton truck | 330 |
| 5-ton truck | 500 |
| 7- to 9-ton truck | 550 |
| Tractor | 350 |
| Trailer (20–30 ft) | 400 |
| Trailer (30–40 ft) | 600 |
| Trailer (more than 40 ft) | 800 |
| Bicycle | 24 |
| Motorcycle | 40 |
| Accessible | 390 |
| Long-life delivery vehicle | 250 |

### 324.2 Lines 1 Through 13: Postal Vehicles

Provide parking spaces for all vehicles required for postal operations based on on-site observation. Allow enough spaces for reasonable growth. Consult with the local operations manager to project 10-year requirements.

### 324.3 Lines 14, 15, 23, and 24: Official

Provide parking spaces for the passenger vehicles of the plant manager, postmaster, postal inspectors, and other postal employees required to use their own, Postal Service, or General Services Administration (GSA) vehicles for postal business.



PAGE 4/4 * RCVD AT 1/28/2008 4:50:49 PM [Eastern Standard Time] * SVR:FTLWFB1/9 * DNIS:3411 * CSID:678 442 6078 * DURATION (mm-ss):02-00